**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 28, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROGER D. TUCKER,

Defendant-Appellant.

No. 05-3259

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 03-CR-10220-01-MLB)**

---

Howard A. Pincus, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with him on the briefs), Denver, Colorado for Defendant-Appellant.

Matt Treaster, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), Wichita, Kansas for Plaintiff-Appellee.

---

Before **HENRY**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

Roger D. Tucker was charged with one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition, both in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After a jury trial, he was

convicted of the ammunition count and acquitted of the firearm count. On appeal, Mr. Tucker raises three arguments challenging his conviction. He claims that the district court erred in denying his pretrial request to proceed *pro se*, that the district court erred in not inquiring into his pretrial complaints about a breakdown in communication with his attorney, and that the district court erred in allowing an attorney to serve as standby counsel during sentencing after that attorney had previously withdrawn because of a conflict of interest. Because the district court erred by not allowing Mr. Tucker to represent himself during *voir dire*, we exercise jurisdiction under 28 U.S.C. § 1291 and reverse Mr. Tucker's conviction and remand for a new trial.

## I. Background

Mr. Tucker was indicted for two separate violations of federal firearm laws on December 17, 2003. Shortly after his indictment, Timothy J. Henry of the Office of the Federal Public Defender entered an appearance as Mr. Tucker's attorney, and trial was scheduled for March 16, 2004. On February 24, however, Mr. Henry filed a motion to withdraw as counsel because his office had a conflict of interest. The court granted Mr. Henry's motion and appointed Jon S. Womack, from the federal appointments list, as counsel for Mr. Tucker. On March 15, Mr. Tucker, through his attorney Mr. Womack, filed a motion for a continuance because of Mr. Womack's recent appointment and unfamiliarity with the case. The district court granted the motion and rescheduled the trial for June 9, 2004.

Throughout pretrial preparations, Mr. Tucker complained about Mr. Womack's lack of communication with him. On March 29, 2004, during a status conference, Mr. Tucker informed the district court that Mr. Womack incorrectly asserted that he had communicated with Mr. Tucker three times and that Mr. Womack had, in fact, seen Mr. Tucker only once. Mr. Tucker also stated his intention to file an ineffective assistance of counsel claim against Mr. Womack. During another status conference on June 7, 2004, Mr. Womack informed the court that he does not "have a good relationship with Mr. Tucker." Supp. R. Vol. III, p. 3. He explained to the court that Mr. Tucker "physically threatened" him and "[w]ould not talk to [him] about the case." *Id.* at 3-4. Mr. Womack asked the court to either continue the trial or to allow him to withdraw. The court denied Mr. Womack's motion to withdraw, but granted a second continuance in the interest of justice.

On June 21, 2004, Mr. Tucker told a Deputy United States Marshal who was accompanying him to the courtroom that "his attorney has pushed him over the limit and has him stressed out." R. Vol. I, Doc. 35. He also said that "voices are telling him to kill his attorney" and that "he was not certain what would happen when [he] would get around his attorney." *Id.* As a result of Mr. Tucker's comments, the government filed a motion for a psychological examination and evaluation to determine whether Mr. Tucker was competent to stand trial. The district court granted the government's motion and scheduled a

competency hearing for November 15, 2004. At the competency hearing, Mr. Tucker waived an evidentiary hearing and accepted the findings in the psychiatric reports that deemed him competent to assist counsel and sane at the time of the alleged offenses. Mr. Tucker did not voice any complaints about Mr. Womack at the November 15 hearing.

The jury trial was scheduled for March 1, 2005. That day, during a pretrial motion hearing before *voir dire*, Mr. Womack informed the court:

> My client still doesn't want me handling this case because he wants me to call witnesses that I deem it improper to call because I think it would be malpractice. And so I'm just not going to call 'em. And I told him that I would mention to the Court that for that reason he doesn't want me handling this case. And so I guess I've done that.

R. Vol. VI, p. 13. As the district court was explaining *voir dire* procedures, Mr. Tucker stated, "I'd like to make a proper objection for the record. I would like to defend myself in this case. It's my Sixth Amendment right." *Id.* at 14-15. The district court denied Mr. Tucker's request. The court explained:

> [T]his case has been on file — I don't know how long, frankly, this case has been on file. . . . There have been a lot of delays in this case in part because of the necessity to have Mr. Tucker examined. And that took quite a while, of course, as it always does. But this case has been set for trial for an awfully long time; and as the record will reflect, this is the morning of trial. This is the first time, although Mr. Tucker has objected to his attorney in the past and even threatened him, this is the first time Mr. Tucker has ever indicated that he would like to represent himself. And pursuant to the case of [*United States v. Mackovich*, 209 F.3d 1227 (10th Cir. 2000)], the Court finds that Mr. Tucker's request to represent himself is solely for the purpose of delay and to obstruct this case. So that request is denied.

-4-

*Id.* at 15-16. After hearing the district court's explanation, Mr. Tucker clarified that he was not "ask[ing] to delay the proceedings at all." *Id.* at 16. The court restated its ruling, noting that "[i]t would delay the proceedings considerably," that Mr. Tucker should have asked to represent himself "months ago," and that his motion was "for the purpose of delay and for the purpose of harassment and for the purpose of obstructing the progress of this case." *Id.*

Following the denial of Mr. Tucker's request to represent himself, the district court proceeded with *voir dire*, during which Mr. Tucker was represented by Mr. Womack. After the jurors had been selected, but before they were sworn in, the district court revisited Mr. Tucker's earlier request to represent himself. The court held a hearing at which only the judge, Mr. Tucker, Mr. Womack, U.S. Marshals, court staff, and court security were present. During the hearing, Mr. Tucker explained that he made the decision to represent himself that morning when Mr. Womack announced that he was not calling the witnesses Mr. Tucker wanted him to call. After listening to Mr. Tucker's proposed defenses and proposed witnesses and explaining to him that most of the defenses were frivolous and that subpoenas would not issue for most of the witnesses, the court ruled that Mr. Tucker could represent himself. Specifically, the court found that Mr. Tucker had clearly and unequivocally asserted his intention to represent himself and that his waiver of the right to counsel was knowingly and intelligently made. The court also discussed the timeliness of Mr. Tucker's motion, noting that "[a]ll of

the motions for continuance . . . were reasonable, responsible motions," and accordingly did not find Mr. Tucker's motion to be untimely. *Id.* at 61. In explaining its decision to government counsel, the court said, "I've satisfied myself, even though I think it is a completely stupid decision on his part, I'm compelled by what I consider to be not very good law to permit him to represent himself." *Id.* at 64.

At trial, Mr. Tucker appeared *pro se* and Mr. Womack served as standby counsel. On March 4, 2005, the jury returned a guilty verdict on the ammunition possession charge, but found him not guilty of possessing a firearm. On June 29, 2005, the district court entered a final judgment sentencing Mr. Tucker to 120 months' imprisonment. Mr. Tucker filed a timely appeal on June 30, 2005.

## II. Discussion

Although the district court ultimately granted Mr. Tucker's request to proceed *pro se*, Mr. Tucker claims that the district court erred in denying him the right to represent himself during *voir dire*. We review the district court's factual findings for clear error, but we review the ultimate question of whether a constitutional violation occurred *de novo*. *United States v. Mackovich*, 209 F.3d 1227, 1236 (10th Cir. 2000).

A criminal defendant has a constitutional and statutory right to waive counsel and represent himself. *Faretta v. California*, 422 U.S. 806, 834-36 (1975). This right includes the right to control one's own defense, "to make

motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984). When a defendant properly invokes the right to self-representation, the denial of any one of those elements is a denial of the right to self-representation. *See id.* Deprivation of the right to self-representation requires automatic reversal because the impact of "its denial is not amenable to 'harmless error' analysis." *Id.* at 177 n.8. Accordingly, the only question presented here is whether Mr. Tucker properly invoked his right to self-representation prior to *voir dire*. If so, then the district court's summary denial of his request to proceed *pro se* before *voir dire* violated his Sixth Amendment right to represent himself.

To properly invoke the right to self-representation, a defendant must satisfy four requirements. First, the defendant must "clearly and unequivocally" inform the district court of his intention to represent himself. *Mackovich*, 209 F.3d at 1236 (internal quotation marks omitted). Second, the request must be timely and not for the purpose of delay. *See id.* Third, the court must conduct a comprehensive formal inquiry to ensure that the defendant's waiver of the right to counsel is "knowingly and intelligently" made. *Id.* (internal quotation marks omitted). Finally, the defendant "must be 'able and willing to abide by rules of procedure and courtroom protocol.'" *United States v. Smith*, 413 F.3d 1253, 1279 (10th Cir. 2005) (quoting *McKaskle*, 465 U.S. at 173). The government does not

challenge that Mr. Tucker's initial pre-*voir dire* request to represent himself was clear and unequivocal or that his ultimate waiver was made knowingly and intelligently. Instead, the government claims that the district court properly denied Mr. Tucker's request because his request was untimely and a tactic for delay, and because Mr. Tucker had demonstrated an inability to comply with courtroom procedures.

This Circuit has not announced a bright-line rule for determining whether a request for self-representation is untimely. However, other circuits have held that a request to proceed *pro se* is timely if it is made before the jury is impaneled and not intended as a tactic for delay. *Avila v. Roe*, 298 F.3d 750, 753 (9th Cir. 2002) ("[A] *Faretta* request is timely if made before jury impanelment, 'unless it is shown to be a tactic to secure delay.'" (quoting *Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir. 1982))); *United States v. Young*, 287 F.3d 1352, 1354 (11th Cir. 2002) ("[A] defendant's request to proceed *pro se* is untimely if not made before the jury is empaneled."); *United States v. Betancourt-Arretuche*, 933 F.2d 89, 96 (1st Cir. 1991) (explaining that a request for self-representation is timely only if asserted before the jury is impaneled, and finding a request made after the jury was sworn untimely); *Chapman v. United States*, 553 F.2d 886, 887 (5th Cir. 1977) ("[A] demand for self-representation must be honored as timely if made before the jury is selected, absent an affirmative showing that it was a tactic to secure delay."); *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15 (2d

Cir. 1965) ("The right of a defendant in a criminal case to act as his own lawyer is unqualified if invoked prior to the start of the trial.").

The government relies on our decision in *Smith*, 413 F.3d at 1281, to argue that Mr. Tucker's request was untimely because it was made on the day of trial. In *Smith*, the defendant asked to represent himself six days before trial. *Id.* at 1279-80. In finding his request untimely, we stated:

> While we have never determined precisely when a request to proceed pro se becomes untimely, we have found waiver when a defendant failed to assert the right clearly until six days before trial—which is the exact circumstance we face here. We conclude, then, that in this case Mr. Smith's request to represent himself was untimely. Although the jury had not yet been impaneled, Mr. Smith asserted his right to self-representation six days before trial in a case that had been going on for nearly a year, that had already been continued, and that involved complex issues that would mandate another lengthy continuance to allow Mr. Smith to prepare for his own defense.

*Id.* at 1281 (internal citation omitted). Relying on the language at the beginning of this paragraph, the government contends that Mr. Tucker's request, made less than six days before trial, was necessarily untimely. We decline to read *Smith* so broadly.

Rather than creating a general rule at odds with that adopted by our sister circuits, *Smith* found the defendant's request untimely under the specific circumstances of the case. The Court acknowledged the general rule—noting that "the jury had not yet been impaneled"—but relied on case-specific factors that made it proper for the district court to deny the defendant's motion. Specifically,

the Court noted that the defendant waited until six days before trial to assert his right to represent himself, that the case "had been going on for nearly a year," had already been continued, and "involved complex issues that would mandate another lengthy continuance" if the request was granted. *Id.* The Court also relied on elements of the defendant's behavior suggesting that "Mr. Smith was intending only to continue the case and delay the prosecution," namely, that "Mr. Smith refused to speak to his attorneys altogether—even in front of the presiding judge" and "threatened to disobey the court's instructions not to speak during trial." *Id.* at 1280.

We therefore reject the government's argument that a motion for self-representation made six days before trial is *per se* untimely. *Smith* is entirely consistent with the prevailing rule that a motion for self-representation is timely if it is made before the jury is impaneled, unless it is a tactic to secure delay.

Applying that standard, the government also argues that Mr. Tucker's motion for self-representation was a tactic for delay. As our precedents show, the determination whether a motion for self-representation is a tactic to secure delay does not rest exclusively on evidence of the subjective intentions of the defendant, but includes such considerations as the actual delay that would be caused by granting the motion, whether the delay could have been avoided if the defendant had made the request for self-representation earlier, and whether the defendant had good reasons for not making the motion in a more timely manner.

In *Mackovich*, 209 F.3d at 1237, we noted that the defendant not only sought and received three continuances, but coupled his request for self-representation made on the first day of trial with a fourth motion for continuance and "threatened to 'stand mute' and withhold his participation" when his motion was denied. In *Smith*, 413 F.3d at 1281, we noted that the defendant waited nearly a year before making the motion (with no apparent reason), that the case had already been continued, and that granting the motion would entail "another lengthy continuance." We also characterized the defendant's actions as a "'cat and mouse' game" because he "refused to speak to his attorneys altogether" and "threatened to disobey the court's instructions not to speak during trial." *Id.* at 1280-81.

The record in this case contains no such manifestations of dilatory intent. Mr. Tucker first complained about his counsel's representation eleven months before trial, leading Mr. Womack to file a motion to withdraw, which was denied. Later, on the advice of "voices," Mr. Tucker said he was considering killing Mr. Womack. R. Vol. I, Doc. 35. This won him a competency hearing but no hearing on the adequacy of representation. On the morning of trial, Mr. Womack informed the court that Mr. Tucker "still doesn't want me handling this case." R. Vol. VI, p. 13. After his motion for self-representation was denied and *voir dire* had been conducted with Mr. Womack still in the counsel seat, Mr. Tucker told the court that he had made the motion for self-representation on the morning of

trial because he had just learned Mr. Womack was not going to call specific witnesses he had explicitly requested. When the district court observed that granting his request would delay the proceedings, Mr. Tucker responded that he was not asking for a continuance. Upon reconsidering Mr. Tucker's motion after *voir dire*, the district court concluded that "all of the [previous] motions for continuance . . . were reasonable, responsible motions," and did not find that Mr. Tucker was seeking to represent himself solely for the purpose of obtaining a third continuance. *Id.* at 61. Mr. Tucker was ready and willing to proceed *pro se* with the trial scheduled that morning, and did, in fact, proceed to trial without a continuance immediately after the district court granted his request for self-representation.

The government relies on the district court's initial ruling, before *voir dire*, that Mr. Tucker's motion was "for the purpose of delay and for the purpose of harassment and for the purpose of obstructing the progress of [the case], which has gone on before." *Id.* at 16. We ordinarily would accord great deference to the trial court's evaluation of the defendant's motives, in light of the court's ability to observe the defendant's demeanor and the importance of the court's authority to control its docket. In this case, however, the district court reconsidered its initial ruling. After *voir dire*, and without any renewal of the motion by Mr. Tucker, the district court chose to revisit the issue of *pro se* representation. The court then held a *Faretta* hearing and reluctantly granted the motion on the ground that it

-12-

felt "compelled" by law to do so. *Id.* at 64. Although the court did not explicitly disavow its earlier comments regarding Mr. Tucker's intentions, the later ruling necessarily constituted a disavowal. Nothing had happened in the intervening hours that was relevant to the *Mackovich* standards. Given the unidirectional character of time, the motion could not have been more timely when it was granted than when it originally was made. If there had been any reason to think Mr. Tucker had been playing a "cat and mouse" game with the court when he made the motion, those reasons would have continued to exist after *voir dire* and the court would not have been legally "compelled" to grant the motion. That the district court felt compelled to grant the motion necessarily means that the court concluded, on reflection and after the hearing, that the motion was timely and not a tactic for delay.

The government also suggests that Mr. Tucker "would both interrupt and argue with the trial court." Br. of Appellee 8. Even in its initial ruling, prior to *voir dire*, the district court did not find that Mr. Tucker was unable to abide by rules of procedure and courtroom protocol. As with the timeliness issue, the district court's subsequent ruling that it was legally compelled to grant Mr. Tucker's motion necessarily entails a finding that Mr. Tucker satisfied this criterion. There is insufficient support in the record to support an appellate finding to the contrary.

### III. Conclusion

Mr. Tucker's motion for self-representation, made before jury selection, was not for the purpose of delay and was therefore timely. Accordingly, the district court erred in denying his motion to proceed *pro se*. Because this error is not amenable to harmless error analysis, we **REVERSE** Mr. Tucker's conviction on the ammunition count and **REMAND** for a new trial without considering Mr. Tucker's remaining claims.