Filed 8/11/15  P. v. Chiprez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> FROYLAN CHIPREZ, <br><br> Defendant and Appellant. | D067475 <br><br><br> (San Bernardino County Super. Ct. No. FSB032026) |

APPEAL from a judgment of the Superior Court of San Bernardino County, William Jefferson Powell IV, Judge.  Affirmed.

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Froylan Chiprez of four counts of first degree murder and two counts of attempted murder. (Pen. Code, §§ 187, subd. (a), 664.)[1] The jury found the crimes were committed for the benefit of a criminal street gang and the defendant personally used and intentionally discharged a firearm in each instance. (§§ 186.22, subd. (b)(1), 12022.53, subds. (b), (c), (e)(1).) In all but one count of attempted murder, the jury found that the defendant personally and intentionally discharged a firearm resulting in great bodily injury or death. (§ 12022.53, subds. (d), (e)(1).) The jury also returned true findings the defendant committed multiple murders and the gang murder special circumstance applied. (§ 190.2, subds. (a)(3), (a)(22).) The court sentenced Chiprez to four consecutive life terms without the possibility of parole, plus an additional 125 years to life, plus a determinate term of 31 years four months.

Chiprez contends the trial court violated his federal constitutional right to represent himself at trial. (U.S. Const., 6th Amend.) He argues he was denied effective assistance of counsel in posttrial proceedings when the court held a *Marsden*[2] hearing and a hearing on a motion for a new trial in the absence of newly appointed counsel. Chiprez also maintains the court abused its discretion by denying his request for a one-day continuance when he learned he was required to state why his trial attorney did not provide effective assistance of counsel and any other reason the trial was unfair. Finally,

_____

[1]	Further statutory references are to the Penal Code.

[2]	*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

Chiprez asserts the court erred when it imposed separate punishments for gang crime and firearm use enhancements on the attempted murder counts.

We conclude the trial court did not err when it reconsidered Chiprez's motion to represent himself and determined that considering the totality of the circumstances, the request was untimely and would delay the trial indefinitely. We further conclude Chiprez was not denied effective assistance of counsel in posttrial proceedings when the court held a *Marsden* hearing in the absence of erroneously appointed counsel. The court had the authority to correct its error and acted within its discretion by holding a belated *Marsden* hearing. To the extent the court denied any new trial motion, it was limited to a new trial motion on grounds of ineffective assistance of counsel. We conclude the court abused its discretion in denying Chiprez's request for a one-day continuance to retrieve his notes when he learned he was required to state the reasons his right to counsel was substantially impaired and any other reason he believed he did not receive a fair trial. However, the error was harmless. Finally, we conclude the trial court did not err when it imposed separate punishments for gang crime and firearm use enhancements on the attempted murder counts. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In 2000, the Westside Verdugo was a criminal street gang operating in San Bernardino. There were four cliques within Westside Verdugo, including Little Counts and 7th Street Locos (7th Street). Gilbert Agudo was in charge of Westside Verdugo and Little Counts. His brother, Johnny Agudo, was the president of 7th Street until he was arrested in 1999 for selling narcotics. In a plea bargain, Johnny Agudo provided

3

information resulting in the arrest and conviction of Sal Hernandez, a high ranking member of the Mexican Mafia. According to some sources, the Mexican Mafia put a green light—a kill order—on Johnny Agudo.

While Johnny Agudo was in prison, Luis Mendoza was in charge of 7th Street. His cousin, defendant Froylan Chiprez, controlled most of 7th Street's guns. Johnny Agudo was released from prison on July 6, 2000. On the evening of July 8, Froylan Chiprez and Luis Mendoza met with Lorenzo Arias, John Ramirez, Gilbert Agudo, Armando Villasenor, Marcelino Luna and several others. They discussed the presidency of 7th Street, the possible lifting of the green light on Johnny Agudo and retaliation for the recent murder of Ed Vasquez, a 7th Street gang member, by a rival gang. Late in the evening, they drove to another location to prepare to retaliate for the Vasquez murder. Chiprez, Mendoza, Arias and Ramirez drove together. Chiprez, Mendoza and Ramirez were wearing bulletproof vests. During the ride, Chiprez told his companions the "green light" on Johnny would be on their entire gang if they did not take care of it.

After they arrived, Chiprez, Mendoza, Johnny Agudo and Gilbert Agudo had a heated argument. Mendoza pulled out a gun. He shot and killed Johnny Agudo. At approximately the same time, Chiprez drew one of his two guns, a small Uzi with a 30-round clip, and fired rapidly. He shot Gilbert Agudo in the head at point blank range, and inflicted other wounds as well. Chiprez was shot in the legs. While down, Chiprez shot and killed Marcelino Luna. Someone shot and seriously wounded Armando Villasenor. Anthony Luna was killed as he ran from the scene. Michael Velarde was slightly wounded while running away.

4

Arias and Mendoza asked Chiprez why he shot Marcelino Luna, who was a member of 7th Street. Chiprez replied, "We can't leave no witnesses." Gilbert Agudo and Johnny Agudo each had a gun in their pants pocket or waistband. Neither gun had been fired.

Chiprez fled to Mexico. Luis Mendoza, Lorenzo Arias and John Ramirez were arrested. Ramirez cooperated with the prosecution and served 12 years in prison for manslaughter. Mendoza and Arias were tried, convicted and sentenced to death. In December 2011, Chiprez was extradited from Mexico and charged with four counts of murder and two counts of attempted murder, with gang crime, firearm use and special circumstances enhancements.

On Friday, October 26, 2012, at a trial readiness conference, the court heard and denied Chiprez's motion to replace his court-appointed counsel, James Gass. Chiprez then made an oral motion to represent himself. The trial court advised Chiprez of the perils of self-representation, found that he knowingly and intelligently waived his right to counsel, and granted the motion. The court advised Chiprez that it had cleared its trial calendar for the rest of the year for his case and was ready to begin the trial next week. The court expressed concern that Chiprez's request was made to delay the trial. Chiprez asked for discovery and said he would read 24 hours a day to prepare a defense. There were approximately 10,000 pages of discovery. Names, addresses and locations of witnesses would have to be redacted. The court ordered the People to provide "whatever evidence does not need redaction" to Chiprez on Monday, October 29.

5

On October 29, the court advised Chiprez he had five days to prepare for trial. The next available trial date was November 5. Chiprez said he had yet to receive all the discovery and would review it as quickly as possible. He would not provide a time frame to the court for trial readiness. The court found that Chiprez's request to represent himself was late, the trial had been delayed for several years because Chiprez had fled the jurisdiction, and Chiprez asked to represent himself only because he was frustrated with the denial of his *Marsden* motion. Chiprez had refused to review discovery and cooperate with his attorney. His attorney had announced he was ready for trial on Friday. The court found that Chiprez's request to represent himself was an abuse of judicial process, reversed the grant of pro per status, and reappointed Gass as defense counsel.[3] The trial was held over 16 days in November and December 2012.

At a posttrial hearing in January 2013, Gass informed the court that Chiprez wanted to file a motion for new trial on grounds of ineffective assistance of trial counsel, and said, "[S]o I cannot get involved in that."

The court appointed an attorney from the conflict panel, who appeared on Chiprez's behalf and requested continuances of the predisposition status hearings to allow time for investigation. In April, conflict panel attorney Ed Congdon was assigned to the case. At a hearing in June, Congdon said he had obtained the record and was working through the files and trial transcripts. In August, he asked for "one additional" continuance of the status hearing before selecting motion dates. In September, another

---

[3]     During the course of the trial, Chiprez brought two more *Marsden* motions, which were denied.

6

attorney appeared for Congdon and asked for a continuance. The court asked Chiprez if his sentencing would be timely if held on or about October 4. Chiprez agreed it would be timely.

On October 4, Chiprez, Gass and the prosecutor were present. Attorney Congdon was absent. The trial court said the California Supreme Court had disapproved the practice of appointing a substitute or conflict attorney solely to evaluate whether a criminal defendant received ineffective assistance of counsel (*People v. Sanchez* (2011) 53 Cal.4th 80, 90), and it was required to hold a *Marsden* hearing to determine whether Chiprez could make a colorable claim of ineffective assistance of counsel. The court asked Chiprez to state why he believed Gass's representation was inadequate or "any other reason why you should get a new trial, why you think the trial was unfair. You don't have to have legal briefs. Just tell me in your own words why you think your trial was unfair."

Chiprez asked the court to continue the hearing for a day to allow him to adequately prepare and bring his notes. If he had his notes, he could go step by step through the reasons. The court directed Chiprez to "give me the gist of it" and said he would decide whether to have a second *Marsden* hearing.

Chiprez said Gass did not represent him correctly. He advised Chiprez to testify he had been shot and did not respond to the gunfire. Chiprez wanted to tell the truth. Their relationship deteriorated from that point and he believed he needed another lawyer. He had three *Marsden* hearings during the proceedings and believed his requests for new counsel were unfairly denied. Gass had represented other people who were going to

7

testify against him. He did not object when the court allowed witnesses to be taken out of order, without cross-examining the first witness. Chiprez became upset when Gass would not object and was kicked out of the courtroom. The next day he was shackled in front of the jury. Chiprez said he should have been allowed to represent himself. The prosecutor violated ethical rules by "testifying" in her closing remarks about his prior manslaughter conviction[4] and the presence of children in the home where the shooting occurred, and by showing photographs to the jury of a victim's bloody hands as proof the victim did not fire a weapon.

Chiprez said that while he was testifying, Gass interrupted him and asked him questions. There was an interview of a witness who corroborated Chiprez's claim of self-defense but Gass said he could not present hearsay. If the witness's statement had been presented to the jury, Chiprez believed he would not have been found guilty. The location of the victim and other forensic evidence would have corroborated his self-defense claim. The victim should have had gunpowder residue or burn marks showing he had fired a gun at Chiprez. Gass did not present that evidence.

In response to the court's questions, Gass said he had been a criminal trial lawyer for 18 years and had tried approximately 200 jury cases. Chiprez would not discuss the case with him. He did not learn that Chiprez would testify until very late. There was a potential conflict with one of the witnesses, but it was not an actual conflict. When he discussed the issue with Chiprez, Chiprez waived the conflict. At the time, Chiprez was

---

[4] Chiprez was convicted of involuntary manslaughter in 1994.

in a hurry to go to trial and did not want another attorney. There was a point in the trial when a witness had testified and was due to be cross-examined, and the People asked for another witness to be called out of order. Chiprez did not like that; however, it did not upset Gass's cross-examination of the first witness. Gass did not want to base the defense on forensic evidence. The issues at trial were whether those involved were afraid for their lives when they started shooting, whether it was a planned attack or whether it was a sudden reaction to the Agudos' activities.

The court found that Chiprez did not state a colorable claim of ineffective assistance of counsel and was not entitled to new counsel to investigate a new trial motion based on ineffective assistance of trial counsel. In view of the overwhelming evidence against Chiprez, Gass's performance at trial was excellent. Gass had no control over the forensic evidence. He was not responsible for Chiprez's conduct in the courtroom. Chiprez's shackles were hidden from the jury. The court said, "At this time, based on my own error, I will reappoint Mr. Gass and we will proceed to sentencing."

After the in camera hearing was concluded, the court said it did not find any "colorable reason to proceed with the motion for new trial." The court found that the manner in which the crime was carried out demonstrated significant planning and criminal sophistication, and Chiprez had a prior record of homicide. The court sentenced Chiprez to four life terms without the possibility of parole, plus sentencing enhancements of an additional 125 years to life for personally discharging a firearm causing great bodily injury on counts 1, 2, 3, 4 and 6, and a determinate term of 31 years four months on the

9

two attempted murder counts, including gang and firearm use enhancements. All sentences were consecutive.

DISCUSSION

I

RIGHT OF SELF-REPRESENTATION

Chiprez contends the trial court erred when it revoked his right to represent himself. He argues the record does not support the court's findings his request was late and was made to delay trial. He further argues revocation of a defendant's pro per status is justified only when the defendant has deliberately engaged in obstructionist misconduct that seriously threatens the core integrity of the trial. Chiprez contends there is no evidence to support a finding he engaged in serious obstructionist conduct. He maintains the error requires reversal per se.

A

*Legal Standards and Standard of Review*

"A criminal defendant has a right to represent himself at trial under the Sixth Amendment to the United States Constitution." (*People v. Welch* (1999) 20 Cal.4th 701, 729, citing *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).) "A trial court must grant a defendant's request for self-representation if the defendant unequivocally asserts that right within a reasonable time prior to the commencement of trial, and makes his request voluntarily, knowingly, and intelligently." (*People v. Lynch* (2010) 50 Cal.4th 693, 721 (*Lynch*), abrogated on other grounds by *People v. McKinnon* (2011) 52 Cal.4th 610.)

The timeliness of the defendant's assertion of his right to self-representation is critical. (*People v. Halvorsen* (2007) 42 Cal.4th 379, 433.) A motion for self-representation (*Faretta* motion) may be denied if untimely.[5] (*Lynch*, *supra*, 50 Cal.4th at p. 722.) "In order to invoke an unconditional right of self-representation, the defendant must assert the right 'within a reasonable time prior to the commencement of trial.' " (*People v. Burton* (1989) 48 Cal.3d 843, 852 (*Burton*).) "The 'reasonable time' requirement is intended to prevent the defendant from misusing the motion to unjustifiably delay trial or obstruct the orderly administration of justice." (*Ibid*.)

California law does not define a bright-line test for determining the timeliness of a motion for self-representation. (*People v. Clark* (1992) 3 Cal.4th 41, 99 (*Clark*).) The timeliness of a motion for self-representation is addressed to the sound discretion of the trial court. (*Burton*, *supra*, 48 Cal. 3d at p. 852.) Timeliness is not based "on a fixed and arbitrary point in time, but upon consideration of the totality of the circumstances that exist in the case at the time the self-representation motion is made." (*Lynch*, *supra*, 50 Cal.4th at p. 724.) The trial court not only considers "the time between the motion

---

5       Chiprez recognizes this court likely would conclude his *Faretta* motion is untimely under current California authority. To ensure the issue is preserved for further review, Chiprez relies on federal authority for the proposition that a *Faretta* motion is timely if made before the jury is impaneled. (*Marshall v. Taylor* (9th Cir. 2005) 395 F.3d 1058, 1061, fn. 17; *United States v. Young* (11th Cir. 2002) 287 F.3d 1352, 1353; *United States v. Tucker* (10th Cir. 2006) 451 F.3d 1176, 1181; *United States v. Stevens* (2d Cir. 1996) 83 F.3d 60, 66.) We are not bound to follow the decisions of the federal circuit courts. (*People v. Romero* (2006) 140 Cal.App.4th 15, 19.) Moreover, the federal rule permits a court to deny an otherwise timely motion for self-representation if the motion is made for purposes of delay, as the court found here. (See *Hamilton v. Vasquez* (9th Cir.1994) 17 F.3d 1149, 1158.)

11

and the scheduled trial date, but also such factors as whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation." (*Lynch*, at p. 726.)

Once a request for self-representation has been granted, the court may revoke that right when the defendant has deliberately engaged in serious obstructionist misconduct threatening the core integrity of the trial. (*People v. Doss* (2014) 230 Cal.App.4th 46, 55.) A ruling revoking a defendant's right of self-representation is reviewed for abuse of discretion and will not be disturbed in the absence of a clear showing of abuse. (*People v. Welch, supra,* 20 Cal.4th at p. 735.) The reviewing court defers to the trial court's assessment of the defendant's motives and sincerity, the nature and context of his misconduct and its impact on the integrity of the trial in determining whether termination of the right of self-representation is necessary for a fair trial. (*People v. Carson* (2005) 35 Cal.4th 1, 12.)

B

*Chiprez's Motion for Self-representation Was Untimely*

We reject the argument the *Faretta* motion was timely. Chiprez focuses on the length of time between his motion for self-representation and the scheduled trial date, and disregards other factors the court may consider in determining the timeliness of a *Faretta* motion. In addition, we are not persuaded by Chiprez's argument the court abused its discretion when it revoked his right to represent himself at trial without sufficient

12

showing of misconduct.  The record shows that, after the court granted Chiprez's *Faretta* motion, at the next court date the court learned that the grant of self-representation would delay the trial indefinitely.

The record shows that Chiprez's defense attorney had announced he was ready for trial and the court had cleared its calendar in anticipation of the trial.  The trial was scheduled to begin within the week.  The California Supreme Court has consistently ruled that *Faretta* motions made on the "eve of trial" are untimely.  (*Lynch*, *supra*, 50 Cal.4th at p. 722; see *People v. Valdez* (2004) 32 Cal.4th 73, 102; *People v. Horton* (1995) 11 Cal.4th 1068, 1110; *Clark*, *supra*, 3 Cal.4th at pp. 99-100; *People v. Frierson* (1991) 53 Cal.3d 730, 742.)  The case involved four counts of murder and two counts of attempted murder, and enhancements for criminal gang activity, firearm use, firearm discharge, and firearm discharge causing great bodily injury on each count.  Trial preparation was inherently complex.  There were more than 10,000 pages of discovery that needed to be redacted to protect witnesses before it could be turned over to Chiprez.

Although Chiprez correctly asserts the trial court was aware of these circumstances when it granted his *Faretta* motion, he disregards the additional factors the court discovered the next court day that not only would have delayed the trial indefinitely but made self-representation highly problematic for the integrity of the trial.  Chiprez did not dispute he would need time to investigate and prepare for trial, and said he needed time to review the discovery and other materials *before* he could tell the court when he would be ready for trial.  "A trial court may properly consider the delay inherently caused by such uncertainty in evaluating timeliness."  (*Lynch*, *supra*, 50 Cal.4th at p. 728.)  In

13

addition, the court learned that the trial was delayed for more than 11 years when Chiprez fled to Mexico to avoid prosecution. The victims and the prosecution had a right to a speedy trial. (Cal. Const., art. I, § 29 [in a criminal case, the people of the State of California have the right to due process of law and to a speedy and public trial]; see *Morris v. Slappy* (1983) 461 U.S. 1, 14 [courts may not ignore victims' concerns in the administration of criminal justice].)

Considering the totality of the circumstances, the trial court reasonably determined the *Faretta* motion was untimely. (*Lynch*, *supra*, 50 Cal.4th at p. 726.) In reconsidering its earlier ruling, the court acted within its discretion when it learned the trial had been significantly delayed by defendant's conduct and that granting the motion was reasonably likely to result in substantial delay and disruption of the proceedings, and threaten the integrity of the trial. (*Lynch*, at pp. 726-728.)

II

DENIAL OF RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

Chiprez contends the trial court denied his right to effective assistance of counsel when it held a dispositive hearing on what he characterizes as a new trial motion outside the presence of appointed counsel. He asserts the error requires reversal per se. Chiprez acknowledges the court may have erred when it appointed new counsel to investigate whether the trial attorney provided ineffective assistance of counsel but argues that once the court appointed new counsel, it could not interfere with the established attorney/client relationship. Chiprez also asserts the court abused its discretion when it denied his request to continue the hearing for a day to allow him to retrieve and review his notes.

14

He argues he had expected his attorney to provide the trial court with a status report on his motion for new trial and did not anticipate he would be required to argue a *Marsden* and new trial motions without counsel.

A

*Legal Standards and Standard of Review*

The California Supreme Court disapproves the practice of appointing a substitute or conflict attorney to evaluate whether a criminal defendant has a legal ground on which to move to withdraw a plea on the basis of the current counsel's incompetence. (*People v. Sanchez, supra,* 53 Cal.4th at pp. 89-90.) If a defendant requests substitute counsel, the trial court is required to give the defendant an opportunity to state any grounds for dissatisfaction with the current appointed attorney. (*Ibid.*, citing *Marsden, supra,* 2 Cal.3d at p. 126.) The court must appoint substitute counsel as attorney of record for all purposes if the defendant shows that his right to counsel has been "substantially impaired."[6] (*Marsden, supra*, 2 Cal.3d at p. 123.)

"The court should deny a request for new counsel at any stage unless it is satisfied that the defendant has made the required showing. This lies within the exercise of the trial court's discretion, which will not be overturned on appeal absent a clear abuse of that discretion." (*People v. Smith* (1993) 6 Cal.4th 684, 696 (*Smith*).)

---

[6]     "Substantial impairment of the right to counsel can occur when the appointed counsel is providing inadequate representation or when 'the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citation].' " (*People v. Clark* (2011) 52 Cal.4th 856, 912.)

15

B

*The Trial Court Had the Authority to Reconsider Its Appointment of Conflict Counsel*

We conclude the trial court acted within its discretion by belatedly holding a *Marsden* hearing to comport with appropriate judicial procedure. (*Sanchez*, *supra*, 53 Cal.4th at pp. 89-90.) Every court has inherent power " 'to develop rules of procedure aimed at facilitating the administration of criminal justice and promoting the orderly ascertainment of the truth.' " (*People v. Castello* (1998) 65 Cal.App.4th 1242, 1247 (*Castello*).) A court's inherent power includes the authority to rehear or reconsider rulings. (*Id.* at p. 1248.) "A court could not operate successfully under the requirement of infallibility in its interim rulings. Miscarriage of justice results where a court is unable to correct its own perceived legal errors, particularly in criminal cases where life, liberty, and public protection are at stake." (*Id*. at p. 1249.)

Chiprez does not show he was prejudiced by the delayed *Marsden* hearing. A *Marsden* hearing is a prerequisite to determine whether a criminal defendant has a legal ground on which to move to file a new trial motion on the basis of the current counsel's incompetence. (Cf. *Sanchez*, *supra*, 53 Cal.4th at pp. 89-90.) By not challenging the ruling in the posttrial *Marsden* hearing or in any of the three earlier *Marsden* hearings, Chiprez has waived any claim he was entitled to new counsel. He was not entitled to a new court-appointed attorney unless he could make a colorable claim of inadequacy of counsel. (*Smith*, *supra*, 6 Cal.4th at p. 693.) Chiprez received the process that was due. (*Sanchez*, at pp. 89-90.)

16

C

*Chiprez Was Not Denied Effective Assistance of Counsel in Posttrial Proceedings*

We are not persuaded by the claim the trial court held a "dispositive hearing" on a new trial motion[7] outside the presence of appointed counsel. The court held a *Marsden* hearing to determine whether to appoint new counsel to *investigate a motion for new trial* on the basis of the current counsel's incompetence. The court's comment following the *Marsden* hearing that "Mr. Gass has been reappointed inasmuch as I found no colorable reason to proceed with the motion for new trial" refers to the process of appointing new counsel to investigate a new trial motion on the ground of ineffective assistance of

---

[7]     Section 1181, governing new trial motions, provides: "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only:
     1. When the trial has been had in his absence except in cases where the trial may lawfully proceed in his absence;
     2. When the jury has received any evidence out of court, other than that resulting from a view of the premises, or of personal property;
     3. When the jury has separated without leave of the court after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented;
     4. When the verdict has been decided by lot, or by any means other than a fair expression of opinion on the part of all the jurors;
     5. When the court has misdirected the jury in a matter of law, or has erred in the decision of any question of law arising during the course of the trial, and when the district attorney or other counsel prosecuting the case has been guilty of prejudicial misconduct during the trial thereof before a jury;
     6. When the verdict or finding is contrary to law or evidence, . . ; [¶] . . . [¶]
     8. When new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. . . .
     9. When the right to a phonographic report has not been waived, and when it is not possible to have a phonographic report of the trial transcribed by a stenographic reporter as provided by law or by rule . . . ."  (§ 1181.)

17

counsel. To the extent the court's remarks are construed as denying a new trial motion, the context refers only to a new trial on the ground of ineffective assistance of counsel. The court's finding did not prevent Gass from bringing a new trial motion on another ground, either in January or October 2012.

In January, Gass informed the court Chiprez wanted to bring a motion for new trial on grounds of ineffective assistance of counsel. Gass did not state there were any other grounds for a new trial. In October, Gass was present when Chiprez told the court why he felt the trial was unfair. Other than a claim of prosecutorial misconduct (and his allegations of ineffective assistance), Chiprez did not make any claims that would meet the criteria for a new trial under section 1181. The prosecutor's remarks were a fair comment on the evidence introduced at trial. Chiprez does not challenge the findings that Gass provided competent representation to him. We presume a competent attorney would have informed the court if there were grounds for a new trial. After he was reappointed, Gass did not inform the court there were any grounds for a new trial motion under section 1181. We conclude Chiprez was not denied effective assistance of counsel in posttrial proceedings.

D

*The Trial Court Abused Its Discretion In Denying A Continuance*

We conclude the trial court abused its discretion in denying Chiprez's request to continue the *Marsden* hearing for a day to allow him to retrieve his notes and prepare his

18

remarks.[8]  A court may grant a continuance in criminal proceedings for good cause. (§ 1050, subd. (e).)  Although the trial court has discretion to grant or deny a request for a continuance, "that discretion may not be exercised in such a manner as to deprive the defendant of a reasonable opportunity to prepare his defense."  (*Jennings v. Superior Court of Contra Costa County* (1967) 66 Cal.2d 867, 875-876.)

Here, the court asked Chiprez to explain why he believed his trial attorney was ineffective and provide any other reason he felt the trial was not fair.  Chiprez did not have any prior notice he would be asked to do so.  The requested continuance was reasonable.  Chiprez explained he needed his notes to present his case "step by step."  A one-day continuance of the *Marsden* hearing would have allowed him to do so without substantially delaying the proceedings.

However, after examining the entire cause, we conclude it is not reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)  Chiprez informed the court of his complaints about trial counsel and other aspects of the trial he felt were unfair.  He was allowed to respond to Gass's testimony and the court's ruling. When, as here, " 'the claim of inadequacy relates to courtroom events that the trial court observed, the court will generally be able to resolve the new trial motion without appointing new counsel for the defendant.' "  (*Smith*, *supra*, 6 Cal.4th at pp. 692-693.)  In addition, Chiprez had three earlier *Marsden* hearings in which he presented his concerns

---

[8]    Chiprez did not object to proceeding in Congdon's absence.

about trial counsel to the court—before trial, during jury selection and in the middle of the trial—and the court had denied his requests to appoint new counsel. Thus, to the extent he wanted to raise the same claims at the October 4 hearing and did not do so, the court had considered those claims and denied his requests for new counsel. The error was harmless.

III

GANG CRIME ENHANCEMENT

Chiprez argues the trial court erred when it imposed separate punishments for gang crime and firearm enhancements for the attempted murders of Michael Velarde (count 5) and Armando Villasenor (count 6). He contends section 12022.53, subdivision (e)(2), prohibits the imposition of a gang crime enhancement because he was only vicariously liable for the two attempted murders, and the gang crime enhancement could not be imposed in addition to the firearm use enhancements because he did not personally use or discharge a firearm in the commission of those offenses.

A

*Legal Standards and Standard of Review*

"Section 12022.53 imposes increasingly severe sentence enhancements for firearm use in the commission of certain felonies set forth in subdivision (a) of that section." (*People v. Brookfield* (2009) 47 Cal.4th 583, 589 (*Brookfield*).) These felonies include murder and attempted murder. (§ 12022.53, subd. (a)(1), (18).) "Under section 12022.53, a defendant's *personal use* of a firearm in the commission of a specified felony results in an additional 10-year prison term (§ 12022.53, subd. (b)), personal and

20

intentional discharge of a firearm leads to an additional 20 years (*id.,* subd. (c)), while personal and intentional discharge of a firearm resulting in death or great bodily injury to a person other than an accomplice adds a prison term of 25 years to life (*id.,* subd. (d)) to the sentence for the underlying crime."[9] (*Brookfield*, *supra,* 47 Cal.4th at p. 589.)

"Section 12022.53, subdivision (e)(1), expressly extends liability to aiders and abettors to crimes by a principal armed with a gun, for crimes committed in furtherance of the purposes of a criminal street gang." (*People v. Garcia* (2002) 28 Cal.4th 1166, 1176.) "There is no dispute that an aider and abettor need not personally use or discharge a firearm to be liable under section 12022.53. (§ 12022.53, subd. (e)(1).)" (*Id.* at p. 1177.)

Section 12022.53, subdivision (e)(2), limits the effect of subdivision (e)(1). (*Brookfield*, *supra*, 47 Cal.4th at p. 590.) "When another principal in the offense uses or discharges a firearm but the defendant does not, there is no imposition of an 'enhancement for participation in a criminal street gang . . . in addition to an enhancement imposed pursuant to' section 12022.53. (§ 12022.53(e)(2).)" (*Id.* at p. 590.) However, "a defendant who *personally* uses or discharges a firearm in the commission of a gang-

---

9    "[S]ection 12022.53 was enacted to ensure that defendants who use a gun remain in prison for the longest time possible and that the Legislature intended the trial court to stay, rather than strike, prohibited enhancements under section 12022.53." (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1129 (*Gonzalez*).) Thus, "after a trial court imposes punishment for the section 12022.53 firearm enhancement with the longest term of imprisonment, the remaining section 12022.53 firearm enhancements and any section 12022.5 firearm enhancements that were found true for the same crime must be imposed and then stayed." (*Id.* at p. 1130.)

related offense is subject to *both* the increased punishment provided for in section 186.22 *and* the increased punishment provided for in section 12022.53." (*Id.* at p. 590.)

"Whether a defendant used a firearm in the commission of an enumerated offense is for the trier of fact to decide. [Citation.] We review the sufficiency of the evidence to support an enhancement using the same standard we apply to a conviction. [Citation.] Thus, we presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence." (*People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1058.)

B

*Additional Factual Background*

Chiprez was charged with gang crime enhancements under section 186.22 on each count. He was also charged with firearm enhancements under section 12022.53, subdivision (b), [personal use of a firearm], subdivision (c), [personal and intentional discharge of a firearm] and subdivision (d), [personal and intentional discharge of a firearm resulting in great bodily injury] on each count. With the exception of the allegation under subdivision (d) in count 5, the jury returned true findings on the firearm and gang crime enhancements. The jury specifically found that Chiprez personally used a handgun, and personally and intentionally discharged a handgun, in counts 5 and 6, and that he personally and intentionally discharged a handgun, which caused great bodily injury to Villasenor, in count 6.

According to the abstract of judgment and the minute order, the trial court imposed the following sentence enhancements: As to count 5 (Velarde): Six years eight

22

months (1/3 the middle term) pursuant to section 12022.53, subdivision (c); and three years four months (1/3 the middle term) pursuant to section 186.22; it imposed but stayed 10 years pursuant to section 186.22.  As to count 6 (Villasenor), the court imposed 25 years to life pursuant to section 12022.53, subdivision (d); and 10 years pursuant to section 186.22; it imposed but stayed 10 years pursuant to section 12022.53, subdivision (b), and 20 years pursuant to section 12022.53, subdivision (c).

C

*The Trial Court Did Not Err When It Imposed the Gang Crime and Firearm Use Enhancements*

Chiprez argues the charging document provided insufficient notice he would be subject to gang crime and firearm enhancements for his personal use and discharge of a firearm.  He contends the charges allege only that *a principal* committed the firearm enhancements.  Chiprez maintains that the jury was given ambiguous verdict forms, which conflated his personal use and discharge of a firearm (not alleged), with personal use and discharge of a fireman by a principal (alleged).  He argues there is not substantial evidence to support a finding he *personally* tried to kill Velarde and Villasenor.  He also contends the jury may have been misled by the prosecutor's closing argument in which she told the jury the firearm enhancements applied to the defendant even if someone else in the gang did the shooting.

"[A] defendant has a cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes."  (*People v. Mancebo* (2002) 27 Cal.4th 735, 747, 752-754 [court erred when it

23

purported to substitute the unpled multiple victim circumstance for the properly pleaded and proved gun use circumstance at sentencing].)  "Section 12022.53, subdivision (j), states:  'For the penalties in this section to apply, the existence of any fact required under subdivision . . . (d) *shall be alleged in the information* or indictment and either admitted by the defendant in open court or found to be true by the trier of fact.'  (Italics added.)"  (*People v. Riva* (2003) 112 Cal.App.4th 981, 1001 [defendant had proper notice of firearm enhancement because it was alleged as to other counts]; accord, *People v. Arias* (2010) 182 Cal.App.4th 1009, 1018 (*Arias*) [nothing in the charging documents or pleadings informed the defendant that the People would seek to use the multiple victim circumstance or the gun use circumstance to secure additional sentence enhancements].)

Unlike the charging documents in *Mancebo* and *Arias*, the charging document in this case expressly alleges that a principal personally used or discharged a firearm under section 12022.53, subdivisions (b), (c) and (d) in each count.  Further, any ambiguity in the charging document was clarified by the court in its instructions to the jury.  Nothing in the record indicates Chiprez objected to this instruction on any grounds, including inadequate pleading.  (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 221-222 [party forfeits the right to claim error as grounds for reversal on appeal when he or she does not raise the objection in the trial court].)  The court instructed the jury:  "if you find the defendant guilty of the crimes charged in Counts 1, 2, 3, 4, 5, and 6 . . . you must then decide whether, for each crime, the People have proved the additional allegations that the defendant personally and intentionally discharged a firearm during those crimes and, if so, whether the defendant's act caused great bodily injury or death. . . .  [¶] . . . [¶]  To

24

prove that the defendant intentionally discharged a firearm, the People must prove that: 1. The defendant personally discharged a firearm during the commission [or attempted commission] of that crime; AND 2. The defendant intended to discharge the firearm." (CALCRIM No. 3150.) The jury was also instructed that it must follow the law as the court explained it, and if it believed the attorneys' comments on the law conflicted with the court's statements, it must follow the court's instructions. (CALCRIM No. 200.) We presume the jury understood and followed those instructions in reaching its verdict. (*People v. Williams* (2009) 170 Cal.App.4th 587, 623, citing *People v. Danielson* (1992) 3 Cal.4th 691, 722.)

In *People v. Valenzuela* (2011) 199 Cal.App.4th 1214, 1238, the reviewing court held that the defendant was not subject to a gang crime enhancement for participation because the jury found only that *a principal* used a firearm in the commission of the attempted murder. Here, by contrast, the jury found that Chiprez personally and intentionally used and discharged a firearm. There is no doubt that Chiprez fired a gun during the commission of the murders and attempted murders, and was a principal in each event. The record does not support defendant's argument the murders and attempted murders were discrete events and he was only an accomplice in counts 5 and 6.

Velarde testified he saw semiautomatic rapid fire coming from Chiprez's gun. He turned to look at the Agudo brothers when he was hit in the back. He did not see who shot him. Velarde testified Chiprez fired a gunshot behind his head. There is substantial evidence to support the findings Chiprez personally and intentionally fired a gun at Velarde and Villasenor, and that Villasenor suffered serious bodily injury as a result. We

25

therefore conclude the trial court did not err when it imposed gang crime penalty enhancements in counts 5 and 6.

DISPOSITION

The judgment is affirmed.

McDONALD, J.

WE CONCUR:

NARES, Acting P. J.

IRION, J.