# REVISED

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

No. 96-10504

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THOMAS J. SULLIVAN; H.J. SALLEE, "MICKEY",

Defendants-Appellants.

---

Appeal from the United States District Court
for the Northern District of Texas

---

April 25, 1997

Before DUHÉ, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This case is before us a second time. Defendants Thomas J. Sullivan and H.J. "Mickey" Sallee conducted a complex real estate scheme involving bogus loan transactions. They were charged and convicted of conspiracy, bank bribery, and making false entries in their financial books. The defendants were sentenced and ordered to pay over $11 million in restitution. We affirmed their convictions in an unpublished decision, but remanded the case to the district court for reconsideration of the sentences and restitution. United States v. Sullivan, No. 94-10583 (5th Cir., Sept. 25, 1995) (unpublished). After the district court imposed the same sentence on the defendants and vacated its previous restitution order, the defendants moved for a new trial on the basis of newly discovered evidence. The motion was denied.

The central issue in this case is whether the district court erred by denying the defendants' post-trial, post-appeal motion for a new trial based on newly discovered evidence. The defendants claim that the Government stressed at trial that three loan applications were backdated by the defendants. The newly discovered evidence allegedly shows that the defendants could not have backdated the applications or known about it. Finding that the district court did not abuse its discretion in denying the defendants' motion for a new trial, we affirm.

## BACKGROUND

This case centers on the circumstances surrounding the disbursement of four loans by defendants Thomas J. Sullivan and H.J. "Mickey" Sallee to a series of real and "straw" investors. Sullivan was a Dallas real estate/loan broker and Chairman of the Board of Tristar Capital Corporation (Tristar). Sallee was Chairman of the Board of San Angelo Savings Association (San Angelo). The defendants sold land through loans disbursed by San Angelo and property purchased by Tristar. All four loans subsequently went into default.

As part of its case-in-chief, the Government presented the theory that Sullivan and Sallee actually backdated the loan applications themselves, knew about the backdating and did nothing about it, or instructed someone to backdate the loan applications. The Government proffered the testimony of Mary Becker, who reviewed loan files at San Angelo at the time the four loans were made. She testified that when the loan applications came in, the front page of the application was complete with the applicant's signature and the date of that signature. The back side of the applications were blank. Becker further testified that San Angelo employee Audrey Russell filled in the back side of the loan applications and would, on the basis of the Board of Directors' meeting, fill in the name of the borrower, the amount of the loan, the term of the loan, the interest rate, and the date that the Board had approved the loan.

After the defendants unsuccessfully challenged their convictions on appeal, they discovered that the Government's theory of loan application processing was mistaken. According to an affidavit obtained from Audrey Russell, the front side of the loan applications was only partially completed

2

when they reached her desk. Russell stated that either she or Anita Weldon (who is now deceased) would often change the date on the front side of the loan application to correspond with the date San Angelo's Board of Directors approved the loan. These alterations, claimed Russell, "appeared" to be made on the three loans at issue in the trial. It was only after these changes were made by Russell or Weldon that Becker would receive the loan applications. The defendants also produced evidence from a forensic document expert, Linda Collins, that the type used on one of the backdated loan applications matched the type of a letter Ms. Weldon typed around the time of the loan transactions.

Armed with this newly discovered evidence, the defendants moved the district court for a new trial. They argued that the "true" picture of loan processing rendered "false" Ms. Becker's testimony that the front of the loan applications was "complete" when she received them. The defendants claim that in an affidavit presented to the district court, Ms. Becker admitted that her testimony was false (although not intentionally false). Moreover, the defendants argued that they could not have known about Russell's alterations because the Government only provided the defendants with photocopies of the loan documents, which did not (and could not) reveal the correction fluid used on the applications. The defendants claimed that because they were in the heat of trial and were informed by the Government that the applications were "exactly like the originals," they did not investigate the matter further.

The Government painted a different picture. It claimed that the original documents had been pulled, copies were marked "Original Pulled," and the defense attorneys were informed that they could have access to the original documents if the attorneys so desired.

Faced with these competing stories about the circumstances surrounding the dating of the loan applications, the district court denied the defendants' motion. First, the district court concluded that because the defendants had access to the original loan applications prior to trial, they could have sought out the "backdater." Second, the district court held that the defendants did not exercise due diligence because Ms. Becker testified at the beginning of trial and identified Ms. Russell as the person responsible for completing the loan applications. According to the district court, the

3

defendants had ample time to search out Ms. Russell and obtain any favorable evidence she may have had. This appeal followed.

## STANDARD OF REVIEW

The district court's denial of the defendants' motion for new trial is reviewed for an abuse of discretion. United States v. Pena, 949 F.2d 751, 758 (5th Cir. 1991).

## DISCUSSION

"Motions for new trials based on newly discovered evidence 'are disfavored by the courts and therefore are viewed with great caution.'" United States v. Pena, 949 F.2d 751, 758 (5th Cir. 1991) (quoting United States v. Fowler, 735 F.2d 823, 830 (5th Cir. 1984)). We have established a four-part test, known as the "Berry Rule," for determining whether a new trial should be granted on the basis of newly discovered evidence. United States v. Freeman, 77 F.3d 812, 816 (5th Cir. 1996). The four factors are: "(1) the evidence was newly discovered and unknown to the defendant at the time of the trial; (2) failure to detect the evidence was not a result of lack of due diligence by the defendants; (3) the evidence is material, not merely cumulative or impeaching; and (4) the evidence will probably produce an acquittal." United States v. Ardoin, 19 F.3d 177, 181 (5th Cir.), cert. denied, 115 S. Ct. 327 (1994); Fed.R.Crim.P. 33. If the defendant fails to meet one of the four factors, the motion for new trial should be denied. See Ardoin, 19 F.3d at 181.

This case turns on whether the defendants' attorneys exercised due diligence in discovering the "true" backdater of the loan applications.[1] The defendants' main contention is that the district court erred when it concluded that the defendants' attorneys did not act with due diligence in discovering Audrey Russell's testimony about the "true" reason the loan applications were backdated. Relying on United States v. Walus, 616 F.2d 283, 304 (7th Cir. 1980), they argue that the Berry Rule should be "'circumscribed by a rule of reason.'" As such, argue the defendants, the district court's conclusion that the original documents were available to the defendants' attorneys "completely

---

[1]Accordingly, we need not address the question of whether the district court erred in its analysis of the remaining Berry factors.

4

ignores the fact that both defense counsel were told that the photocopies were 'exactly' like the originals." The defendants conclude that the district court was ostensibly punishing the defendants for trusting the Government's representations. Trusting the Government, assert the defendants, must amount to due diligence (or at least, not justify a finding of "undue" diligence).[2]

The district court rejected the defendants' argument, concluding that (1) the defendants at all times had access to the original loan documents; (2) testimony about the processing of the loan applications occurred on the first day of a three-week trial; (3) the defendants expressed no surprise at the introduction of the loan application evidence; and (4) the defendants did not object to the evidence or seek a continuance so that the matter could be explored. We have canvassed the record and our cases and conclude that the district court did not abuse its discretion in concluding that under these facts, the attorneys' failure to expose the "true" nature of the backdating was the result of a lack of diligence on their part.[3]

---

[2]Sullivan and Sallee also argue that we should take into consideration the comparatively fewer resources available to appointed defense attorneys in our determination of whether, under the totality of circumstances, counsel for Sullivan and Sallee exercised due diligence in discovering the "true" backdater of the loan applications. We reject this argument. The facts of this case convince us that the superior resources of the Government did not make defense counsel's job of legal representation unreasonably onerous. As we point out in the text, defense counsel had a number of legal tools available to them, tools they opted not to use. Nothing in our cases, common sense, or logic supports their contention.

[3]See, e.g., United States v. Jaramillo, 42 F.3d 920, 925 (5th Cir.) (finding lack of due diligence where defendant knew videotape would be introduced at trial, yet did nothing to counteract potentially damaging information on the tape), cert. denied, 115 S. Ct. 2014 (1995); United States v. Time, 21 F.3d 635, 642 (5th Cir. 1994) (finding lack of due diligence where defendant knew of information and had opportunity to investigate matter further); United States v. Ardoin, 19 F.3d at 181 (failing to subpoena documents counsel knew existed amounted to lack of due diligence); United States v. Munoz, 957 F.2d 171, 173 (5th Cir.) (failing to call witness at trial amounted to lack of due diligence), cert. denied, 506 U.S. 919 (1992); United States v. Pena, 949 F.2d 751, 758 (5th Cir. 1991) (holding that just because witness was uncooperative and unavailable did not preclude attorney from discovering needed evidence from other sources).

An alternative rule, known as the "Larrison Rule," relaxes the standard for granting a new trial when material, false or perjured testimony is presented at trial. The rule was born in Larrison v. United States, 24 F.2d 82 (7th Cir. 1928), in which the Seventh Circuit held that a new trial should be granted when "(a) [t]he court is reasonably well satisfied that the testimony given by a material witness was false[;] (b) [t]hat without [the false testimony] the jury might have reached a different conclusion[; and] (c) [t]hat the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial." Id. at 87-88 (emphasis added). There is, however, some doubt as to whether the Larrison Rule has taken

**CONCLUSION**

Finding that the district court did not abuse its discretion when it denied the defendants'
motion for a new trial, we AFFIRM.

AFFIRMED.

---

hold in this Circuit. Compare Newman v. United States, 238 F.2d 861, 862 n.1 (5th Cir. 1956)
(applying the Larrison Rule) with United States v. Adi,
759 F.2d 404, 407 (5th Cir. 1985) (declining to apply the Larrison Rule); see also United States v.
MMR Corp., 954 F.2d 1040, 1049 (5th Cir. 1992) (presenting the history of the Larrison Rule in the
Fifth Circuit).

We do not decide whether the Larrison Rule is viable, however, because the district court's
findings in its due diligence analysis convince us that Sullivan and Sallee would not prevail under the
Larrison standard either. We have concluded that the district court did not abuse its discretion when
it determined that the defendants' attorneys expressed no surprise at trial and that the attorneys had
access to the original loan documents. As such, Sullivan and Sallee have failed to meet prong (c) of
the Larrison Rule.