IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-20044
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAMES ARTHUR WOODLEY,

Defendant-Appellant.

-------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Texas
U.S.D.C. No. H-99-CR-464-2
-------------------------------------------------------------
May 13, 2002

Before SMITH, BENAVIDES, and PARKER, Circuit Judges.

PER CURIAM:[*]

Defendant James Arthur Woodley ("Woodley") was indicted for possessing with intent to

distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 841, conspiring to

possess with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. §

846 and possessing a firearm in relation to and in furtherance of these crimes in violation of 18

U.S.C. § 924(c)(1). After hearing all the evidence, including testimony from Terrance Garrison

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

("Garrison"), a confidential informant, a jury convicted Woodley on all counts. After trial, Woodley filed a motion for new trial, asserting the existence of newly discovered evidence that demonstrates that Garrison lied on the stand with respect to the extent of his criminal history. The district court denied the motion. At sentencing, the district court concluded, pursuant to U.S.S.G. § 3B1.1, that an upward adjustment to Woodley's base offense level was appropriate for his management role in the offense, and sentenced Woodley to 420 months' incarceration. Woodley appeals, contending that: (1) the evidence at trial was insufficient to support conviction on each of the three counts; (2) the district court abused its discretion when it denied his motion for a new trial; and (3) the district court abused its discretion in upwardly adjusting his sentence pursuant to U.S.S.G. § 3B1.1. Because we find no error, we affirm.

## I.

## BACKGROUND

In 1999, Garrison met Joe Taylor ("Taylor") while both men were serving time in the Harris County jail. While in jail, Garrison discussed the possibility of obtaining drugs from Taylor in the future. When Taylor was released from jail, the two set up a meeting.

Unbeknownst to Taylor, Garrison was working for the Drug Enforcement Administration (the "DEA")[1], something he had done occasionally since 1995. On July 28th, 1999 Garrison and Darren Bush ("Bush"), a City of Houston police officer posing as Garrison's nephew, met with Taylor. Bush proposed purchasing 20 ounces of crack cocaine for $10,000. After attempting to obtain the cocaine, however, Taylor informed Bush that his "source" needed more time to convert or "cook" the cocaine powder to crack and that he would contact Bush later. Woodley was

---

[1]Garrison was paid $3000 plus expenses for setting up the following drug transaction.

Taylor's source.

On July 29th Taylor called Garrison to complete the drug transaction. Garrison, surveiled[2] by numerous DEA agents, headed to the meeting place, a McDonalds restaurant. After meeting at the McDonalds, Taylor and Garrison drove by Woodley's aunt's house where Woodley spoke to them and arranged to meet at a Fiesta supermarket. About an hour after Taylor and Garrison arrived at the Fiesta, Woodley drove up in a black Lincoln. Woodley told Taylor and Garrison to follow him to another location and drove away. As Garrison waited for permission to move from his DEA handlers, Woodley returned and, after Garrison received permission, he and Taylor followed Woodley to a Mobil gas station. Woodley and an unidentified man exited the Lincoln, and together with Garrison, entered the Mobil gas station. Taylor stayed outside. In the gas station, Woodley ordered the unidentified man to show Garrison what was later determined to be approximately 20 ounces of crack cocaine. At Garrison's signal, DEA agents converged on the Mobil station. Taylor was arrested. Woodley and the unidentified man fled when they saw the uniformed officers. Woodley was quickly apprehended and taken into custody. The unidentified man escaped.

The black Lincoln was searched. A loaded Lorcin 9 mm handgun was found, easily accessible (with the handle up, ready to grasp), next to the driver's seat.

While in custody Woodley confessed to his participation in the drug transaction. At trial, however, he denied participation. He testified, despite phone records indicating that he had called Garrison six times on the day of the drug transaction and officer eyewitness testimony that he met with Garrison and Taylor, that he never spoke to Garrison and was not in the Fiesta parking lot

---

[2]Garrison was under heavy surveillance during the entirety of the drug transaction.

3

on July 29th. He further testified that he was at the Mobil station on the 29th, but only to buy cigarettes.

## II.

## ANALYSIS

**A.      Sufficiency**

Woodley challenges the sufficiency of the evidence supporting his convictions on the conspiracy, possession and firearm counts for the first time on appeal. Accordingly, our sufficiency review is restricted to whether Woodley's "convictions resulted in a 'manifest miscarriage of justice,' which exists only if the record is devoid of evidence pointing to guilt or if the evidence on a key element of the offense is so tenuous that a conviction would be shocking." United States v. Smith, 203 F.3d 884, 887 (5th Cir. 2000) (citation omitted). In conducting this review we consider all of the evidence presented in a light most favorable to the government, and we give the verdict the benefit of all reasonable inferences and credibility determinations. Id. at 887-88.

As to the possession[3] and conspiracy counts,[4] Woodley simply argues that Taylor's and Garrison's testimony is untrustworthy. In light of the standard of review, Woodley's challenge is

---

[3]"To prove possession of a controlled substance with intent to distribute, the government must show: (1) knowing (2) possession of a controlled substance (3) with intent to distribute that substance. The possession may be actual or constructive. To establish aiding and abetting under 18 U.S.C. § 2, the defendant must have (1) associated with a criminal venture, (2) participated in the venture, and (3) sought by action to make the venture successful." United States v. Carreon-Palacio, 267 F.3d 381, 389 (5th Cir. 2001) (citations omitted).

[4]In order to obtain a conviction for conspiracy to possess cocaine with intent to distribute, the government was required to prove "(1) the existence of an agreement between two or more persons to violate federal narcotics laws; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the agreement." United States v. DeLeon, 247 F.3d 593, 596 (5th Cir. 2001).

4

frivolous. See also United States v. Bermea, 30 F.3d 1539, 1552 (5th Cir.1994) ("We have held that a guilty verdict may be sustained if supported only by the uncorroborated testimony of a coconspirator, even if the witness is interested due to a plea bargain or promise of leniency, unless the testimony is incredible or insubstantial on its face."). Nonetheless, Taylor's and Garrison's testimony was corroborated by officer testimony, physical evidence and Woodley's confession. Having reviewed the record, we conclude that there is overwhelming evidence that supports the jury's conclusion that Woodley conspired to, and possessed crack cocaine.

With respect to the § 924(c) firearm count, Woodley contends that the fact that he had the loaded Lorcin 9mm handgun in his vehicle within easy reach while transporting the drugs is insufficient to support his conviction. Woodley cites no authority in support of this contention and it is contrary to our case law. "[F]irearm possession that furthers, advances, or helps forward the drug trafficking offense violates [§ 924(c)] ." United States v. Ceballos-Torres, 218 F.3d 409, 415 (5th Cir. 2000) (holding that evidence supported conviction for violating § 924(c) where defendant had an accessible loaded 9mm handgun in proximity to drugs). In determining whether firearm possession furthers a drug trafficking offense a trier of fact should consider: (1) the type of drug activity that is being conducted; (2) accessibility of the firearm; (3) the type of weapon; (4) whether the weapon is stolen; (5) the status of the possession (legitimate or illegal); (6) whether the gun is loaded; (7) proximity to drugs or drug profits; and (8) the time and circumstances under which the gun is found. Id. at 414-15. Here, the facts that a loaded 9mm handgun was found easily accessible to Woodley in the vehicle in which he was transporting $10,000 worth of crack cocaine clearly provide some evidence supporting his conviction. In fact,

Woodley impliedly admitted to bringing the gun to facilitate the drug transaction.[5]

**B.     Motion for a New Trial**

As noted above, Woodley contends that he is entitled to a new trial because newly discovered evidence demonstrates that Garrison perjured himself on the stand. At trial, Garrison testified that his criminal history consisted of a felony forgery conviction in 1998 and various misdemeanor convictions for writing 10-15 forged checks. He further testified that no additional charges were pending against him. In contrast, newly discovered evidence indicates that Garrison was also convicted of felony forgery in 1994 (19 counts), that at the time of trial a theft charge against him was pending and that he had committed more than 15 acts of misdemeanor forgery.[6] Although it is undisputed that Garrison testified falsely at to his prior convictions, it is also undisputed that the Government was unaware of the falsity.[7]

We review the district court's denial of Woodley's motion for new trial for an abuse of discretion. United States v. Sullivan, 112 F.3d 180, 182 (5th Cir. 1997). Where as here, the defendant bases his request for a new trial on newly discovered evidence, we apply a four-factor test. Id. at 183. "The four factors are: (1) the evidence was newly discovered and unknown to the defendant at the time of the trial; (2) failure to detect the evidence was not a result of lack of due diligence by the defendants; (3) the evidence is material, not merely cumulative or

___

[5]In his confession Woodley made "a humorous comment about, you know, he always remembered his father telling him that if he was going someplace where he had to take a gun he had no business going."

[6]Although it cannot be determined with certainty from the record, it appears Garrison was convicted in two separate proceedings (one in 1986 and one in 1995) of 29 counts of misdemeanor forgery and theft.

[7]The Government ran a background check on Garrison on the National Crime Information Computer and provided this report to Woodley. Inexplicably, this report did not contain the additional convictions.

6

impeaching; and (4) the evidence will probably produce an acquittal.[8]  If the defendant fails to meet one of the four factors, the motion for new trial should be denied."  Id.  Finally, we note that "[m]otions for new trials based on newly discovered evidence are disfavored by the courts and therefore are viewed with great caution."  Id. at 182-83.  Although it reviewed using a different and more stringent standard,[9] the district court denied Woodley's motion, concluding that, in light of the overwhelming evidence of Woodley's guilt beyond a reasonable doubt, evidence of Garrison's false testimony would not have produced an acquittal.  We agree.

We recognize that if Woodley had the evidence of Garrison's perjury he would have been able to cast some doubt on Garrison's veracity, i.e., because Garrison lied about his record on the stand, he might also be lying about Woodley's involvement in the drug sale.  However, the jury already was aware of substantial evidence affecting Garrison's credibility, including his status as a paid informant and his admission of numerous forgery convictions.  Most importantly, as discussed above, Garrison's testimony was corroborated by government agents, Taylor, the physical evidence, Woodley's actions and Woodley's confession.  As we concluded above in Section A, the evidence in the record of Woodley's guilt is overwhelming.  In light of this

---

[8]There is inconsistency in our case law regarding whether the standard is "probably produce an acquittal" or "the jury might have reached a different conclusion."  See United States v. MMR Corp., 954 F.2d 1040, 1049 n.7 (5th Cir. 1992).  Because both appellee and appellant urge the former standard and because Woodley's challenge falters under either standard, we need not address the inconsistency.

[9]The motion below was brought pursuant to Napue v. Illinois, 360 U.S. 264 (1959), which applies to cases where the Government is aware of the perjured testimony.  "In order to establish a Napue violation, the defendant must show (1) the statements in question are actually false; (2) the prosecution knew that the statements were false; and (3) the statements were material."  United States v. Haese, 162 F.3d 359, 365 (5th Cir. 1998); see also MMR Corp., 954 F.2d at 1046-47 ("The general rule is that newly discovered evidence will not entitle a defendant to a new trial under Rule 33 unless the evidence probably would produce a different result.  However, if the government used false testimony and knew or should have known of its falsity, a new trial must be held if there was any reasonable likelihood that the false testimony affected the judgment of the jury.").

overwhelming evidence, evidence of Garrison's false testimony with respect to his prior convictions could not have led to an acquittal. Accordingly, we conclude that the district court did not abuse its discretion when it denied Woodley's motion for a new trial.

## C.  Adjustment for Role

As noted above, the district court, finding that Woodley was a manager of the drug transaction, adjusted his base offense level upward by two levels pursuant to § 3B1.1(c).[10] Woodley contends conclusorily that the summary of evidence in the presentence report and the trial testimony were insufficient support for the district court's finding. We disagree.

We review the district court's factual finding for clear error. United States v. Narvaez, 38 F.3d 162, 166 (5th Cir.1994). While there must be an acceptable evidentiary basis for the court's fact-finding at the sentencing hearing, "[t]he district court's findings are not clearly erroneous if they are plausible in light of the record reviewed in its entirety." Id. The evidence indicated that Woodley "cooked" the cocaine, chose the location for the drug transaction, and ordered a subordinate to show Garrison the cocaine. This evidence clearly supports the district court's finding.

## III.

## CONCLUSION

In light of the foregoing discussion, the decision of the district court is hereby AFFIRMED.

---

[10]Section 3B1.1(c) provides for two-level increase if the defendant was an organizer, leader, manager, or supervisor in any criminal activity involving fewer than five participants. U.S.S.G. § 3B1.1(c).