ACCEPTED
06-15-00121-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
10/13/2015 9:31:47 PM
DEBBIE AUTREY
CLERK

## NO.  06-15-00121-CR

**IN THE COURT OF APPEALS**

**FOR THE SIXTH DISTRICT OF TEXAS**

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
10/14/2015 8:48:00 AM
DEBBIE AUTREY
Clerk

BILLY JOE SELMAN

Appellant

VS.

THE STATE OF TEXAS,
Appellee.

## BRIEF OF APPELLANT

On Appeal from the County Court at Law of Hill County, Texas
in Cause No. M0890-14
Hon. Matt Crain, Presiding

RICARDO DE LOS SANTOS
SBN 00792456
202 S. Main Street
Cleburne, Texas   76033
Telephone:  (817)558-3885
Fax: (817)641-2525
ABOGAD098@AOL.COM
ATTORNEY FOR
APPELLANT

# LIST OF INTERESTED PARTIES

**RESPONDENT/APPELLANT**

BILLY JOE SELMAN

**Represented by:**

**Trial:**

Scott Phillips
SBN 24080595
5041 Airport Freeway
FOli Worth, Texas 76117
817-523-9529

**Appeal:**

Ricardo De Los Santos
SBN 00792456
202 S. Main
Cleburne, Texas 76033
Office: (817) 558-3885
Fax: (817) 641-2525

| **COMPLAINANT** | **Represented by:** |
|---|---|
| | **Trial/Appeal** |
| The State of Texas | Hon. R. David Holmes<br>Hill County Attorney<br>P. O. Box 253<br>Hillsboro, TX 76645<br>(254) 582-4047 |

# TABLE OF CONTENTS

List of Interested Parties .i

Table of Contents ii

Index of Authorities .iv vii

Texas Codes, Statutes, and Rules viii

Statement of the Case 1

Points of Error 1

**(1) DID THE COURT ERR IN DENYING APPELLNAT'S REQUEST TO REPRESENT HIMSELF?**

**(2) DID THE STATE FAIL TO PROVE THE ELEMENTS FOR EVADING ARREST WHEN A FOURTH AMENDMENT VIOLATION HAD OCCURRED?**

**(3) WAS THERE A VIOLATION OF DISCOVERY TO THE DFENSE IN VIOLATION OF ARTICLE 39.14?**

Statement of Facts 2

Summary of the Argument.. " 3

Argument. 4

Point of Error No.1 " 4 - 14

Point of Error No.2 14 22

Point of Error No.3.. .. 23

Prayer            24

Certificate of Service            25

**APPENDIX:** HILL COUNTY CLERKS RECORD

# INDEX OF AUTHORITIES

State Cases

Adams v. United States ex reI. McCann, 317 U.S. 269,
**101 S.Ct. 1880, 87 L.Ed. 268**     **11**

Brown v. Wainwright, 665 F.2d 607 (5th Cir. 1982)     12

Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37
**L.Ed.2d 706 (1973)**     **19**

California v. Ciraolo, 476 U.S. 207, 213, 106 S.Ct.
1809, 1812, 90 L.Ed.2d 210 (1986) Oliver, 466 U.S. at 182 n.
**12, 104 S.Ct.** at 1743 **n.12)**     **16**

**Chapman, 553 F.2d at 892**     **4**

Ciraolo, 476 U.S. at 213, 106 S. Ct. @ 1812)     17

**Cooksey, 350 S.W.3d** at 187     **22**

**Davis, 74 S.W.3d at 96-97.....**     **22**

Duhig v. State, 171 S.W.3d 631, 637-38 (Tex. App.-
Houston [14[th] Dist.] 2005, pet. ref'd)     18

Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525,
**45 L.Ed2d 562**     **11**

Faretta, 422 U.S. at 835, 95 S.Ct. at 2541.     13

Faretta v. California, supra, Id., at 422 U.S. 818     12

Florida v. Jardines, - U.S.-, 133 S.Ct. 1409, 1414,
185 L.Ed. 2d 495 (2013)                                              •--------------15

Jardines, 133 S.Ct. at 1415674                                                   16

Jardines, 133 S.Ct. at 1416                                                    ..18

Jardines, 133S.Ct. at 1416 (quoting Kentucky v. King,
U.S., 131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (2011)                               17

Johnson v. Zerbest, 304 U.S. 458, 464, 58 S.Ct. 1019,
1023, 82 L.Ed 1461 (1938)                                                        13

MckasKle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944,
79 L.Ed 122                                      "                    "          11

Mincey v. Arizona, 437 U.S. 385, 392, 98 S.Ct.2408,
2413, 57 L.Ed.2d 290 (1978)                                                      19

Oliver, 466 U.S. at 182 n. 12, 104 S.Ct. at 1743 n. 12)                          16

Oliver v. United States, 466 U.S. 170, 180, 104 S.
Ct. 1735, 1742,80 L. Ed.2d 214 (1984)                                           15

Porteous v. State, 259 S.W.3d 741, 746 (Tex.  App.- Houston
{lst Dist.} 2007), pet. dism'd, improvidently granted,
253 S.W.3d  288 (Tex. Crim. App. 2008)                                           16

Reasor, 12 S.W.3d at 817                                                         22

Sandvoal, 241F.3d at 774; Brown, 665 F.2d at 610                                .4

Sapienza v. Vincent, 534 F.2d 1007 (2nd Cir. 1976)                               13

Silverman v. United States, 365 U.S. 505, 511 81 S.Ct.
679,683, 5 L.Ed.2d 734 (1961).... .                                  ..       . 15

States v. Hamilton, 559 F.2d 1370, 1373 (5th Cir. 1977) 6

States v. Pena, 949 F.2d 751, 758 (5th Cir. 1991) 5

Tuitt v. Fair, 822 F.2d 166, 174, 177 (1st Cir. 1987) (citing Brown, 665 F.2d at **611)** **4**

United States v. Sullivan, 112 F.3d 180, **182 95th Cir. 1997)** 5

United States v. Reedy, 304  F.3d 358,372 (5th Cir. 2002) 5

United States v. Fowler, 735 F.2d 823, 830 (5th Cir. 1984) 5

United States v. MMR Corp. 954F.2d 1040, 1046 (5th Cir. 1992) 6

United States v. Tucker, 451 F.3d 1176, 1181-82 (10th Cir. 2006) 6

United States v. Oreye, 263 F.3d 669, 672 (7th Cir. 2001), cert. Denied  535 U.S. 933 122 S.Ct. 1308, 152 L.Ed.2d 218 (2002) 6

United States v. Beers, 189F.3d 1297 (10th Cir. 1999), cert. denied, 529 U.S. 1077, 120 S.Ct. 1696, 146 L.Ed.2d 501 (2000) 7

United States v. Plattner, 330 F.2d 271 (2nd  Cir. 1964) 12

United States v. Mitchell, 137 F.2d 1006 (2nd Cir. 1943) 12

United States ex reI. Hyde v. McMann, 263F.2d 940 (2nd Cir.) 12

United States v. Purnett, 910 F.2d 51 (2nd Cir. 1990) 12

United States v. Matsushita, 794 F.2d 46 (2nd Cir. 1986) 13

United States v. Brown, 744 F.2d 905 (2nd Cir. 1984) 13

United States v. Jones. -U.S.--, 132 S.Ct. 945, 950-51 n.3,
**181 L.Ed.2d 911 (2012)**                                                    **15**

Washington v. State, 152 S.W.3d 209, 214 (Tex. App.-
**Amarillo 2004,  no pet.)**                                                   **17**

Washington, 152 S.W.3d at 215 (citing Buchanan v. State,
129 S.W.3d 767, 773 (Tex.App.-Amarillo 2004, pet. ref'd)        18

Wright v. State, 7 S.W.3d 148, 152 (Tex. Crim. App. 1999)        19

## Texas Codes, Statutes, and Rules

Tex. Code Crim. Proc. Ann. Art. 39.14        1, 23

Tex. Code Crim. Proc. Ann. Art. 36        .3

U.S. Const. Amend. **IV**        14

U.S.C.A. Const. Amend. 6        7, 8

## STATEMENT OF THE CASE

On or about May 19, 2015, Appellant was found guilty in the County Court at Law Number of Hill County, Texas, in Cause Number M0890-14, for the offense of Evading Arrest "A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him." The Jury found Appellant guilty and the Court assessed eight (8) months in the County Jail. Appellant timely gave Notice of Appeal on November 21,2013.

## POINTS OF ERROR

(1)   **DID THE COURT ERR IN DENYING APPELLNAT'S REQUEST TO REPRESENT HIMSELF?**

(2)   **DID THE STATE FAIL TO PROVE THE ELEMENTS FOR EVADING ARREST WHEN A FOURTH AMENDMENT VIOLATION HAD OCCURRED?**

(3)   **WAS THERE A VIOLATION OF DISCOVERY TO THE DFENSE IN VIOLATION OF ARTICLE 39.14?**

## STATEMENT OF FACTS

On or about March 19,2013, **BILLY** JOE SELMAN was at horne when Officer Darlin Lebel arrived at his horne without a search warrant or an arrest warrant and exited her patrol car and demanded that Appellant open his horne door to issue him or have him sign a Criminal Trespass violation. Subsequently, officer Lebel and officer Jason Patrick obtained a key from his mother Linda Selman and entered his bedroom and arrested Appellant for allegedly evading arrest while in his bedroom. Appellant contends that the arrest was "illegal" and that he had no duty to respond to any officer that had violated his fourth Amendment rights. This Appeal resulted.

## SUMMARY OF THE ARGUMENT

The charge of Evading Arrest in Texas requires "A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him." There is no evidence that showed that BILLY JOE SELMAN planned to or committed an offense by intentionally fleeing from a person he knew was a peace officer who attempting lawfully to anest or detain him because he was at his home and a clear violation of the Fourth Amendment had occurred, therefore the charge of Evading Arrest was legally invalid and conviction cannot stand.

## ARGUMENT
## POINT OF ERROR NO.1

**(1) DID THE COURT ERR IN DENYING APPELLNAT'S REQUEST TO REPRESENT HIMSELF?**

The impetus behind the limitations on the right to self-representation is the inherent tension between that right and the right to counsel in the Sixth Amendment. **Sandvoal, 241 F.3d at 774; Brown, 665 F.2d at 610.** A defendant's assertion of the right to self-representation necessarily results in a waiver of the right to representation by counsel. **Chapman, 553 F.2d at 892.** And in the tug of war between these two rights, courts have consistently added their precedential weight behind the right to counsel, noting that it is the preeminent right. **Tuitt v. Fair, 822 F.2d 166, 174, 177 $\mathrm{n}^{st}$ Cir. 1987) (citing Brown, 665 F.2d at 611).** Against this background, the Government next turns to whether Fields clearly and unequivocally asserted his right to self-representation and whether he subsequently waived that right.

The Court has required an individual to clearly and unequivocally assert the desire to represent himself.

**Standard of Review.**

This court reviews the district court's denial of a motion for new trail for an abuse

of discretion.  **See United States v. Sullivan, 112 F.3d 180, 182 95th Cir. 1997)
(citing United States v. Pena, 949 F.2d 751, 758 (5th Cir. 1991).**

  **In** order to prevail on a motion for new trial based on newly-discovered

evidence, a defendant has to show that:  (1) the evidence is newly discovered and

was unknown to the defendant at the time of trial; (2) the failure to detect the

evidence was not due to a lack of diligence by the defendant; (3) the evidence is not

merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence

introduced at a  new trial would probably produce an acquittal.  **United States v.**

**Reedy, 304  F.3d 358, 372 (5th Cir. 2002)** (citations omitted).  Motions for a new

trial based on newly discovered evidence are "disfavored by the courts and

therefore are viewed with great caution. **"United States v. Fowler, 735 F.2d 823,**

**830 (5th Cir. 1984).**   Appellant contends that his Constitution rights were violated

to self representation when he wrote a letter to the Court and submitted a Motion

For New Trial that was denied by the Court when it was presented to the Court and

abusing the Court's discretion by not conducting a hearing. (Exhibit 1     3,4)

As a general rule, a district court has the discretion to deny a motion for new trial without an evidentiary hearing. **United States v. MMR Corp. 954 F.2d 1040, 1046 (5th Cir. 1992)** (citations omitted.) Usually, a district court holds and evidentiary hearing only in "certain unique situations typically involving allegations of jury tampering, prosecutorial misconduct, or third party confession. "**United States V. Hamilton, 559 F.2d 1370, 1373 (5th Cir. 1977).**

Where defendant's motion for self-representation was made before jury selection and was not made for the purpose of delay, trial court erred in denying his motion to proceed pro se and conduct voir dire and that decision mandated an automatic reversal. **United States V. Tucker, 451 F.3d 1176, 1181-82 (10th Cir. 2006).**

Of course the flip-side of adequately explaining the perlis of self-representation, is that a judge can explain too much. "If the judge exaggerates either the advantages of being represented or the disadvantages of self-representation, he will be accused of having put his thumb on the scale and prevented the defendant from making an informed choice. **United States Ve Greye, 263 F.3d 669, 672 (7th Cire 2001), cert. Denied 535 U.S. 933 122 S.Ct. 1308, 152 L.Ed.2d 218 (2002)**

"While we may perhaps prefer the district court to allow defendant to fully explain his reasons for dissatisfaction with counsel, 'formal inquiry is not essential here the defendant otherwise stated his reasons for dissatisfaction on the record."

**United States v. Beers, 189 F.3d 1297 (loth Cir. 1999), cert. denied, 529 U.S. 1077, 120 S.Ct. 1696, 146 L.Ed.2d 501 (2000).**

The constitutional right of self-representation in a criminal case is conditioned upon a voluntary, knowing and intelligent waiver of the right to be represented by counsel. **U.S.C.A. Const. Amend 6.**

Once a defendant waives representation by counsel and asserts the Sixth Amendment right of self-representation at a criminal trial, the trial court must fully inform him in some manner of the nature of the charges against him, the possible penalties, and the dangers of self-representation. **U.S.C.A. Const. Amend 6.**

Trial court's obligation to fully inform defendant who waives right to counsel and asserts right to self-representation of the nature of the charges against him, the possible penalties, and the dangers of self-representation arises under the Sixth Amendment, and it applies to state, as well as federal judges. **U.S.C.A. Const. Amend 6.**

Trial court's obligation to fully inform defendant who waives right to counsel and

7

asserts right to self-representation of the nature of the charges against him, the possible penalties, and the dangers of self-representation arises under the Sixth Amendment, and it applies to state, as well as federal judges. <u>V.S.C.A.</u> <u>Const.</u> <u>Amend</u> <u>6.</u> Appellant submits the following from the cold record:

> THE COURT: Thank you. I do have some questions in the fact that you have underlined certain paragraphs, or certain parts of the paragraphs, in this waiver of attorney and I wanted to get your true intent as to your request. You have underlined the fact that you have the right to represent yourself, also that you have knowingly and intelligently waived your rights, and that you request the Court to allow you to proceed without an attorney being appointed for you, but you also underlined "so that I can hire my own private attorney." So I wanted to ask you, Mr. Selman, what is your intent in signing that waiver of attorney?
>
> THE DEFENDANT: Well, I my intention was to try to find and hire a private attorney in time that I was given between 4 o'clock yesterday about 3:30 when the hearing was over and this morning, and that wasn't enough time. I know my constitutional rights say I can represent myself. That seems to be good enough, unless you want to reschedule.

THE COURT: Well, I'm not going to reschedule the hearing, but I want you to understand that while you do have the right to represent yourself, if you do elect to do so, there are certain requirements. I mean, you're going to be held to the same standards as an attorney in representing yourself in a jury trial, such as you have to know the rules of evidence; you have to know how to conduct voir dire; you need to know how many strikes that you get during voir dire process. I mean, those are just some of the examples that you need to know, that only you really are above to obtain through legal training, and I'm asking you, have you had any of that training? Are you capable of representing yourself in an actual jury trial?

THE DEFENDANT: I don't have a license to practice law in the State of Texas, no.

THE COURT: Well, do you know the rules of evidence?

THE DEFENDANT: I know that you all can't prove that this was me, for this case, and I

THE COURT: I'm not the one - I'm not the one that has the burden of proof. I'm not trying to prove anything; okay? I'm here to make sure that you get a fair trial, and part of the part of that, part of my job, is to make sure that you are equipped with counsel to assist you through this legal process of a fair trial. I'm not the State of Texas; okay? I'm an impartial person that is here and listens to the evidence and decides what is admissible and what is not admissible under the terms under the law, so I — I don't make any arguments for or against either party; okay? I'm here

9

to make sure that you get a fair trial, and I'm   I have great concerns of you representing yourself on a jury trial.  I think if it was - if it was some other hearing, you probably would have the ability to do that.

THE DEFENDANT:  I would tend to agree with you.  I would like a fair trial as well.  Mr. Phillips has visited me probably a total of 15 minutes to prepare for this, so I'm not real sure that I'm getting a fair trial as far as being defended, you know, properly.

THE COURT:  Well, I can tell you that in the pretrial motions that he has filed today, the motions in limine, it does appear that he has reviewed the case.  It does appear that he has prepared for the case.  We have voir dire - he has tendered to the Court a voir dire PowerPoint where he is prepared to go fonvard on your case, so I mean, I don't know whether or not you're satisfied with that, but that -  but I want you to know that it does appear that he has prepared for your case, even though it might seem to you that it is a very limited time in talking with you.  So I guess I want to   I want to make it very clear.  Are you okay with going fonvard today with him as your assisted -  him as your attorney?

THE DEFENDANT:  I'll allow due process the opportunity to work, yes, sir.

THE COURT:  Okay.  So you're okay with Mr. Phillips representing you today?

THE DEFENDANT:  Today, yes.

10

THE COURT: Okay. Well, let's take up some preliminary matters before the jury comes in. Mr. Selman, in Cause M0890-14, you stand charged with evading arrest or detention. That is a Class A misdemeanor. It has a range of punishment of up to one year in the county jail and a fine not to exceed $4,000.00. Do you understand what you are charged with?

THE DEFENDANT: Yes.

THE COURT: How do you – well, is it necessary, Mr. Phillips, for the State to read the charging instrument?

MR. PHILLIPS: We will waive the reading at this time, Your Honor.

THE COURT: Mr. Selman, how do you plead to the offense alleged: guilty, not guilty or no contest?

THE DEFENDANT: Not guilty (RR V5, p. 9-13)

Argument

It has been well settled by The Supreme Court of the United States, that the Sixth Amendment guarantees a criminal defendant an independent constitutional right of self-representation. Faretta v. California, 422 U.S. 806,95 S.Ct. 2525, 45 L.Ed2d 562; MckaskIe v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed 122; Adams v. United States ex reI. McCann, 317 U.S. 269, 101 S.Ct. 1880, 87 L.Ed. 268

11

"the right of self-representation finds support in the structure of the Sixth Amendment, as well as in the English and colonial jurisprudence from which the Amendment emerged. **Faretta v. California, supra, Id., at 422 U.S. 818.**

The right of self-representation was recognized in t his circuit well before The Supreme Court's decision in <u>Faretta.</u> **United States v. Plattner, 330 F.2d 271** (2nd **Cir. 1964); United States v. Mitchell, 137 F.2d 1006** (2nd **Cir. 1943); United States ex rel. Hyde v. McMann, 263 F.2d 940** (2nd **Cir.). In United States v. Purnett, 910 F.2d 51** (2nd **Cir. 1990),** The Court of Appeals for the Second Circuit reasoned that: "The right to self-representation and the assistance of counsel are separate rights depicted on the opposite sides of the same Sixth Amendment coin." Id, at 54. The alternative argument could be that the defendant acquiesced to counsel's representation, by failing to reassert his right to self-representation. **Brown v. Wainwright, 665 F.2d 607** (5th **Cir. 1982).**

"Our decision here should not be read to imply that a trial court may unduly defer a ruling on a firm request by a defendant to represent himself in the hopes the defendant may change his mind. A defendant is entitled to conduct his own defense even if the court doubts his legal expertise or ability, so long as the request is

12

intelligently and clearly made. <u>Faretta,</u> **422** <u>**U.S.**</u> **at** <u>**835, 95**</u> <u>**S.Ct.**</u> **at** <u>**2541.**</u> Neither should it be read to indicate that a defendant, to avoid waiver, must continually renew his request to represent himself even after it is conclusively denied the trial court. After a clear denial of the request a defendant need not make fruitless motions or forego cooperation with defense counsel in order to preserve the issue of appeal. Id., at 612.

The defendant's acquiescence thereafter cannot be read to signify waiver of a constitutionally protected right, see **Johnson** <u>**v.**</u> **Zerbest, 304** <u>**U.S.**</u> **458, 464, 58** <u>**S.Ct.**</u> **1019, 1023,82** <u>**L.Ed**</u> **1461 (1938)** (stating 'we do not presume acquiescence is the loss of fundamental rights.') (internal quotes omitted); even a lawyer could not be faulted for failing to renew a motion under those circumstances." Id. at 101. **Sapienza** <u>**v.**</u> **Vincent, 534F.2d 1007 (2nd Cir. 1976),** (Defendant's mid-trial request to proceed pro-se properly denied, the right must invoked prior to the start of the trial.); **United States v. Matsushita, 794 F.2d 46 (2nd Cir. 1986),** (same**);** **United States v. Brown, 744 F.2d 905 (2nd Cir. 1984),** (same). In other words, in order for the defendant to have represented himself at his criminal trial, he would have had to make the request prior to the start of trial, and the defendant did exactly

13

that.  Once, the defendant asserted his right of self-representation, the onus was placed upon this Court to entertain the defendant's motion, which this Court failed to do, resulting in the deprivation of the defendant's Sixth Amendment Right of Self-representation.

The above cold record clearly supports Appellant's contention that a subjective standard should be used by this Honorable Court as to Appellant's Constitutional Right for self-representation in which he states that he was coerced and  under duress and did not freely or voluntarily waive his constitutional right.


**(2)  DID THE STATE FAIL TO PROVE THE ELEMENTS FOR EVADING ARREST WHEN A FOURTH AMENDMENT VIOLATION HAD OCCURRED?**


*Entry onto Curtilage and Search and Arrest in Appellant's House*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." **U.S. CONST. Amend. IV.** When the government obtains information by "physically intruding" on an individual's house, "a 'search' within the original meaning of the FOUlih Amendment" has "undoubtedly occurred.

14

*Florida v. Jardines,* - U.S. – – ¸ **133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013)**

(quoting ***United States v. Jones,*** - U.S. – – ¸ **132 S.Ct. 945, 950-51 n. 3, 181 L.Ed.2d 911 (2012)).** The Supreme Court has held that although the Fourth Amendment does not "prevent all investigations conducted on private property," the home "is first among equals." *Id.* One of the core principles of the Fourth Amendment is a person's right "to retreat into his own home and there be free from unreasonable governmental intrusion." *Id.* (quoting ***Silverman v. United States,* 365 U.S. 505, 511 81 S.Ct. 679, 683, 5 L.Ed.2d 734 (1961)).** As the Supreme Court stated in *Jardines,*

> This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window.

To that end, the Fourth Amendment also protects the curtilage, the area "immediately surrounding and associated with the home," which is classified as "part of the home itself for Fourth Amendment purposes. "*Id.* (quoting **Oliver v. United States, 466 U.S. 170, 180, 104 S. Ct. 1735, 1742, 80 L.Ed.2d 214 (1984).** The curtilage is the area around the home, including porches and other areas adjacent to the home, that is "intimately linked to the home, both physically and psychologically" and

1

"to which the activity of the home life extends." ***Jardines.*** **133 S.Ct. at 1415** (quoting **674 California v. Ciraolo, 476 U.S. 207, 213, 106 S.Ct. 1809, 1812, 90 L.Ed.2d 210 (1986) and Oliver, 466 U.S. at 182 n. 12, 104 S.Ct. at 1743 n. 12).**

Defining the boundaries of curtilage is a "familiar" concept "easily understood from our daily experience." ***Oliver.*** **466 U.S. at 182 n. 12, 104 S.Ct. at 1743 n.** 12. In determining whether a particular area is so intimately tied to the home as to constitute curtilage, we consider factors including (1) the proximity of the area to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. Whether a particular area is included within the cUliilage is detennined by whether the defendant had a reasonable expectation of privacy in the area. **Porteous v. State, 259 S.W.3d 741, 746 (Tex. App.- Houston** ⸤ⁿˢⁱ⸥ **Dist.} 2007),** *pet. dism'd, improvidently* **granted, 253 S.W.3d 288 (Tex. Crim. App. 2008)**

### 2. *Intrusion onto curtilage notjustified*

Law enforcement officers are not required to " 'shield their eyes' when passing by the home  on public thoroughfares,' " but their ability "to gather information is

16

sharply circumscribed" when they leave the public thoroughfares and enter constitutionally protected areas.  rd. At 1415 (quoting **Ciraolo, 476 U.S. at 213,106 S. Ct. @ 1812).** When officers gather information in constitutionally protected areas, we must determine whether this was "accomplished through an unlicensed physical intrusion" onto the propeliy. *Id.* Law enforcement officers, like members of the public, have an implied license to approach a home via the front walkway and knock on the front door. *Id.* ("This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) (leave."); **Washington v. State, 152 S.W.3d 209, 214 (Tex. App.-Amarillo 2004,  no pet.)** (holding that general restrictions upon intruding upon curtilage do "not prevent a police officer from approaching and knocking upon the front door of a home"). Police officers who do not have a warrant to search the property "may approach a home and knock, precisely because that is 'no more than any private citizen might do.' **"Jardines, 133S.Ct. at 1416 (quoting Kentucky v. King, U.S.   ,131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (201l).**

This implied license granting permission to police officers to enter onto the curtilage to contact the resident exists so long as the resident has not manifested an

17

intent to restrict access to his home, such as by locking a gate or posting signs indicating that the officer is not invited, and the officer "does not deviate from the normal path of traffic" to the front or back door of the house. Washington, 152 S.W.3d at 215 (citing Buchanan v. State, 129 S.W.3d 767, 773 (Tex.App.-Amarillo 2004, pet. rerd); *see also* **Duhig** v. State, 171 S.W.3d 631, 637-38 (Tex. App.-Houston [14th Dist.] 2005, pet. rerd) (citing with approval cases from other intermediate appellate courts holding that approaching back door of home is permissible and does not constitute search when officers have first tried fi'ont door and received no answer). A license to enter onto property is limited to a particular area of the property. *See Jardines.* 133 S.Ct. at 1416. Thus, an implied license to approach the front door via the front walkway to contact the resident does not extend permission to walk up to a window located on a separate side of the house to attempt to contact the resident. *See id.* ("The scope of a license-express or implied-is limited not only to a particular area but also to a specific purpose.").

Appellant contends that the officers made the observations leading to appellant's arrest from the curtilage, a constitutionally protected area, and they had neither an express nor an implied license to be in the specific area of the curtilage from which

18

they made their observations. It is undisputed that the officers did not have a warrant to search appellant's house and that the officers did not have probable cause to believe that any criminal activity was occurring in the house.

Appellant contends other than depending on **Cady v. Dombrowski, 413 U.S. 433,93 S.Ct. 2523, 37 L.Ed.2d 706 (1973),** which established the community-caretaking exception, the State provides no authority for why that doctrine, which recognizes that "[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency," should be expanded to cover the situation present here, in which officers, in an attempt to make contact with the Appellant reference a possible class C ticket did invade the property and privacy rights of an unrelated individual. **Mincey v. Arizona, 437 U.S. 385,392,98 S.Ct.2408, 2413, 57 L.Ed.2d 290 (1978)** (stating purpose of community-caretaking exception); *Wright v. State,* **7 S.W.3d 148, 152 (Tex.Crim.App.1999)** (noting that community-caretaking exception has "narrow applicability" and stating, "Only in the most unusual circumstances will warrantless searches of private, fixed property, or stops of persons located thereon, be justified under the community caretaking function, given the greater expectation of

privacy inherent with respect to residences and other private real property").

Appellant submits excerpts of the transcript to support his position:

MR. HOLMES: Your Honor, I call Officer Darlin Lebel.

Q.    Okay. When you went to the residence, what did you see?

A.    Mr. Selman run inside the home.

A.    I got to the door and advised Mr. Selman to open the door.

MR. HOLMES: Okay. Her report indicates that she went to the residence to criminally trespass him from the property, so I'm going to refresh her recollection-

Q.    (BY MR. HOMES) Was there any other reason that you went to the residence, other than that he fled from you? And if you need to refer to your report —

A.    Yes, sir. The homeowners asked me to do a criminal trespass on him.

Q.    Okay. And so was that also your purpose in following Mr. Selman to the residence?

A.    Yes, sir.

Q.    And so when you say, "to do a criminal trespass," what does that entail?

A.    To advise Mr. Selman that he's not allowed back on that property and that if he does, further actions will be taken.

Q.    Okay. And is it your department's policy — I've seen it with other departments. Is it your department's policy to actually, like, write out a citation with a criminal trespass warning?

A.    Yes, sir. We have to get him to sign a piece of paper.

Q.    Acknowledging that he'd been warned?

A.      Yes, sir.

Q.      Okay.  Was that also your intent of being at the property?

A.      Yes, Sir.

Q.      So when you went up to the house, what did you do?

A.      Advised Mr. Selman to open the door.

Q.      Was it locked?

A.      Yes, sir.

Q.      Did you attempt to enter the residence?

A.      I don't remember.

Q.      Okay.  And did Mr. Selman ever corne to the door?

A.      No, sir.  (RR V5, P 97-99)


        The Record is clear and direct.  The purpose of the Hubbard Police Department was to notify Appellant that any future Criminal Trespass could lead to possible charges. Appellant contends this factor in itself negates any obligation for Appellant to consent to any search or seizure while at his home without a valid arrest warrant or search warrant.

Q.      Okay.  Ultimately, Officer Lebel, did  you or Officer - Chief Patrick make an arrest on Mr. Billy Joe Selman that day?

A.      Yes, sir, we did.

**Q.** **And for what was he charged?**

**A.** **For evading.**

Based on the factual circumstances presented in this case, the Court should conclude that the arresting officers, at the time they initially approached appellant's house, did not possess an objectively reasonable belief, based on specific and articulable facts, that appellant's house harbored individuals who posed a danger to those on the arrest scene. *Reasor,* **12 S.W.3d at 817;** *Cooksey,* **350 S.W.3d at 187** (holding that officers did not have reasonable, articulable suspicion that defendant posed danger to their safety); *Davis,* **74 S.W.3d at 96-97** (holding that officers did not have reasonable, articulable suspicion that someone other than two women who were being watched by officer was inside trailer and might harm officers). The Court should therefore hold that the search in this case cannot be justified under the protective-sweep exception to the warrant requirement.

Appellant submits the transcript excerpts which clearly show a Constitutional violation of the Fourth Amendment in the instant case.

(3)   WAS THERE A VIOLATION OF DISCOVERY TO THE DFENSE IN VIOLATION OF ARTICLE 39.14?

In reviewing the COUli Reporters Record it is clear that a violation of Article 39.14 occUlTed in the instant case.  In support of the position Appellant presents the following testimony that was elicited by Trial Counsel:

Q.      Okay.  Okay.  Now - so you arrive - does your - was your car equipped with any kind of dashcam video?

A.      Yes, sir.

Q.      Okay.  And was a dashcam video made of this incident?

A.      Yes, sir.

Q.      Okay/  Was it entered into evidence?

A.      It should have been.

Q       Okay.  Okay.  Because I was looking through your report and I didn't see anything about a dashcam video being made.  Do you know of any reason -

A.      There was not one turned in?

Q.      The report doesn't seem to indicate that.  Do you know otherwise?

A.      Our reports don't state about evidence.

Appellant contends that the above testimony clearly shows a violation of Article 39.14 and request this Honorable Court reverse and dismiss the instant case.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Appellant prays this

Honorable COUll in the interest of Justice reverse and remand with an order of

dismissal in the instant case.

RESPECTFULLY SUBMITTED,

sf Ricardo De Los Santos
RICARDO DE LOS SANTOS
SBN 00792456
202 S. Main Street
Cleburne, Texas   76033
(817) 558-3885
(817) 336-3355   fax

ATTORNEY FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

I hereby certify in accordance with TRAP 9.4, that this document has 5712 word

count in the Microfoft Word document.

Is/Ricardo De Los Santos
Ricardo De Los Santos

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was sent

via electronic filing on October 13, 2015 and a copy to the Honorable R. David

Holmes, County Attorney, at the Hill County law office.

/s/Ricardo De Los Santos
Ricardo De Los Santos

NO.  06-15-00121-CR

IN THE COURT OF APPEALS

FOR THE SIXTH DISTRICT OF TEXAS

**BILL**Y JOE SELMAN

Appellant

VS.

THE STATE OF TEXAS,
Appellee.

**APPENDIX OF APPELLANT**

On Appeal from the County COUli at Law of Hill County, Texas
in Cause No. M0890-14
Hon. Matt Crain, Presiding

RICARDO DE LOS SANTOS
SBN 00792456
202 S.Main Street
Cleburne, Texas   76033
Telephone:  (817)558-3885
Fax: (817)641-2525
ABOGAD098@AOL.COM
ATTORNEY FOR
APPELLANT

# APPENDIX:

# DISTRIT CLERK OF HILL COUNTY

EXHIBIT 1.    COpy OF "MOTION FOR NEW TRIAL MOTION IN ARREST OF JUDGMENT.

EXHIBIT 2.    COURT'S ORDER DENYING APPELLANT'S MOTION.

EXHIBIT 3.    COPY OF ENVOLOPE TO THE COURT FROM APPELLANT.

EXHIBIT 4.    COpy OF LETTER FROM APPELLANT TO COURT.



FILED
ANGELIA ...
...

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | **IN THE COUNTY COURT AT LAW** |
| | § | |
| VS. | § | |
| | § | |
| **BILLY JOE SELMAN** | § | **HILL COUNTY, TEXAS** |

## MOTION FOR NEW TRIAL, MOTION IN ARREST OF JUDGMENT

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Billy Joe Selman, the Defendant in the above styled and numbered cause, and files this Motion for New Trial and Motion in Arrest of Judgment pursuant to Rules 21 and 22 of the Texas Rules of Appellate Procedure, and in support thereof would show this court the following;

1.     The Defendant was sentenced on May 19th, 2015.  This Motion, filed within the thirty-day timetable, is therefore timely.  A hearing must be commenced before the 75th day after the sentence, which is August 3, 2015, or this motion is overruled by operation of law.

2.     The verdict in this cause is contrary to the law and the evidence.  See Tex. R. App. P. 21.3.

*(to be amended/Modified once Appellate Counsel receives official Record)*

3.     In support of defendant's motion, the following facts outside the record are hereby alleged:

*(own, self.)*

A. Defendant was Coerced & Forced Not to testify on behalf of his Defense.

B. Hubbard P.D. witnesses and Linda Selman committed Perjury on Stand, Alleging And Stating that Linda gave them Keys to enter the house — the Fact is that Hubbard P.D. broke the back door (forced entry) without A warrant For A Misdemeanor Charge.

C. Hubbard P.D. claimed A video existed, And testified to the jury that Defendant was on Video — however no video was entered into evidence nor shown at Trial.

D. Defendant was charged with "Misdemeanor Evading Arrest"- however Trial testimony Stated Defendant "evaded in a Motor Vehicle", which is A Felony Evading.

E. Judge Denied Defendant His Constitutional Right to defend Himself and to Terminate Court-Appointed Counsel.

4.     The trial court has the discretion to grant a new trial in the interests of justice, as the Court of Criminal Appeals has emphasized:

---

*Motion for New Trial, Arrest of Judgment, and Appointed Appellate counsel.*     Page 1 of 3

EXHIBIT

For more than one hundred and twenty years, our trial judges have had the discretion to grant new trials in the interest of justice, In <u>Mullins</u> <u>v.</u> <u>State,</u> 37 Tex. 337, 339-340 (1872-73), the Supreme Court, which at that time had criminal jurisdiction, held:

> ... The discretion of the District Court, in granting new trials, is almost the only protection to the citizen against the illegal or oppressive verdicts of prejudiced, careless, or ignorant juries, and we think the District Court should never hesitate to use that discretion whenever the ends of justice have not been attained by those verdicts.

<u>State</u> <u>v.</u> <u>Gonzalez,</u> 855 S.W.2d 692 (Tex. Crim. App. 1993).

6. For the foregoing reasons, and for such other reasons that may arise on the hearing of this Motion, Defendant requests a new trial.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays that the Court set aside the judgment of conviction entered in this cause and order a new trial on the merits.

Respectfully submitted,

Billy Joe Selman
Pro-se defendant

## CERTIFICATE OF PRESENTMENT

By signature above, I hereby certify that a true and correct copy of the above and foregoing has been mailed to the Office for the Hill County Court at Law, on this day, May JUNE

__13__, 2015.

## CERTIFICATE OF SERVICE

This is to certify that on ~~May~~ _13_, 2015, a true and correct copy of the above and June foregoing document was served on the County Attorney's Office, Hill County, Texas, by mail delivery.

Billy Joe Selman

## NOTICE FOR A SETTING

On _____, 2015, the Defendant filed a Motion for New Trial and Motion in Arrest of Judgment. The Court finds that the party is entitled to a hearing on this matter, and it is THEREFORE ORDERED that a hearing on this motion is set for _____, at _____,

Signed on _____

_____
JUDGE PRESIDING / COURT COORDINATOR

---

_for New Trial, Arrest of Judgment, and Appointed Appellate counsel._      Page 3 of 3

## AFFIDAVIT

BEFORE ME, the undersigned authority, appeared Billy Joe Selman, who after being duly sworn by me stated the following under oath:

"My name is Billy Joe Selman. I am acting as a pro-se attorney in this cause. I am over the age of 18 years, have never been convicted of a felony, and am competent to make this affidavit.

I hereby swear or affirm that the following facts supporting my motion are true and correct:

_____

Billy Joe Selman
Affiant

**SUBSCRIBED AND SWORN TO BEFORE** ME, the undersigned authority, this /3 day of June ,2015.

CRAIG HAGOOD
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Expires 02-03-2018

_____
Notary Public, State of Texas

_____

*Affidavit on Motion for New Trial, Arrest of Judgment, and Appointed Appellate counsel.*

CAUSE NO'S. M0890-14

FILED
NGELIA ...
ER ...

2015 JUN 23    8:06

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | IN THE **COUNTY COURT AT LAW** |
| | § | |
| vs. | § | |
| | § | |
| **BILLY JOE SELMAN** | § | **HILL COUNTY, TEXAS** |

## ORDER

On ⎧June 23⎫ , 2015, came on to be considered Billy Joe Selman's Motion for

New Trial and Motion in Arrest of Judgment, and said motion is hereby

(Granted) (Denied)

_____
JUDGE PRESIDING

*on Motion for New Trial, Arrest of Judgment, and Appointed Appellate counsel.*

EXHIBIT
1

Billyjoe Selman
406 Hall St,
Hillsboro Tx
76645

**INMATE
MAIL**

Honorable Judge Matt Crain
c/o County Clerk
Hill County Courthouse
PO Box 874
Hillsboro Tx
76645

NORTH TEXAS TX PSDC
DALLAS TX 750
15 JUN 2015 PM 6 L

Freedom
FOREVER

76645087474

Legal Mail

EXHIBIT
3
tabbies

State of Texas
vs
Billy Joe Selman

/Cover Letter/
/Amendment to:

July 13, 2015

Cause No M0870-14
Motion for New Trial
Motion in Arrest of Judgement

2015 JUN 23 AM 8:05

FILED
ANGELA ... 
CLERK ...

**EXHIBIT**
**4**

Hill County Court at Law, Clerk:
Honorable Judge Matt Crain:

Please accept my Motion for New Trial / Motion in Arrest of Judgement. I have been recently made aware that An Appeal has been filed and the court has Appointed Appellate Counsel. It was made to my attention that this Motion for New Trial is usually filed first in order to extend the Appeals deadline And to Also grant myself and the court greater Legal recourse. My previous Court-Appointed counsel, Scott Phillips — which you will recall whom I was unsuccessful in terminating — first withdrew as further counsel, then filed the Appeal, then brought me this official Printed copy of Motion for New Trial, and told me to file it on my own. Why he put me in this quandry, AGAIN!, I **do** not know!! However, after explaining it to Mr. Richard De Los Santos, my Appellate Counsel, it was suggested that I fill in Article #3 ("facts outside the record") to the best of my Ability, have it filed & go from there...??? !!!!

I will have it stated that I will fight this bogus charge as long as there is breath within me & that eventually someone will hear my cries of INJUSTICE! Respectful"